STERN, APPELLEE, *v.* BOARD OF ELECTIONS OF CUYAHOGA COUNTY, OHIO, ET AL., APPELLANTS. (Two cases.)

176

(Nos. 68-234 and 68-245—Decided April 30, 1968.)

*Mr. Paul W. Walter, Sr.,* for appellee.

*Mr. Robert B. Krupansky, Mr. William J. Kraus* and *Mr. Alvin I. Krenzler,* for appellants in case No. 68-234.

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. John L. Dowling,* for appellant in case No. 68-245.

O'NEILL, J. The facts are not in dispute.

Pursuant to Section 3513.07, Revised Code, on February 16, 1968, three days before the February 19, 1968, filing deadline, Frances P. Bolton and A. L. DeMaioribus filed with the Board of Elections of Cuyahoga County a declaration of candidacy, declaring their desire to be candidates for election to the office of delegate from the 22nd Congressional District of Ohio to the Republican National Convention at the primary election to be held on May 7, 1968, and requesting that their names be printed upon the official primary election ballot of the Republican party as candidates for such office. They also filed five part-petitions containing approximately 120 names of qualified electors attesting to the qualifications of Bolton and De-Maioribus to perform the duties of the office, as required by Section 3513.07, Revised Code, which section requires valid signatures of 100 registered electors to place the candidates' names on the primary ballot.

The board of elections certified as valid the said declaration of candidacy and five part-petitions containing approximately 117 valid signatures of registered electors of the 22nd Congressional District.

On February 24, 1968, plaintiff filed a written protest challenging the sufficiency and validity of part-petition No. 5, bearing 26 signatures and circulated by Harry Sanger, on the ground that this part-petition failed to bear the handwritten signature of a notary public in the jurat which appears following the circulator's affidavit.

On March 7, 1968, the Board of Elections of Cuyahoga County conducted a public hearing on that protest

and, at the conclusion of the hearing, unanimously rejected the plaintiff's protest and ordered the names of Frances P. Bolton and A. L. DeMaioribus placed upon the Republican primary ballots as candidates for delegates to the Republican National Convention from the 22nd Congressional District in the primary election to be held on May 7, 1968.

It is undisputed that the declaration of candidacy of Bolton and DeMaioribus is proper and valid and that the candidates took every action required of them by law with regard to their declaration of candidacy and petition.

It is undisputed that Hary Sanger, the circulator of the part-petition in question, took every action and performed every duty required of him by law with regard to the declaration of candidacy and petition.

Specifically, it is undisputed that Sanger:

1. Personally appeared before the notary on February 15, 1968;

2. Was placed under oath administered by the notary;

3. Signed his name and address to the petition;

4. Inserted the date in the jurat showing the day on which Stillman, the notary public, administered the required oath to Sanger;

5. Deposed under oath that:

 (a) He was the circulator of the petition;

 (b) The signatures on the petition were the signatures of the individuals they purported to be;

 (c) All signatures were affixed in his presence.

It is undisputed that the notary, Saul G. Stillman, administered the required oath to the circulator, Harry Sanger, on February 15, 1968.

It is likewise undisputed that the notary, Stillman, affixed his stamp to the jurat in question, and thus printed his name, his title of office of notary public, the limitations of his jurisdiction, and the fact that his commission has no expiration date upon the jurat following the affidavit of the circulator, which jurat contains the handwritten proper date of the day upon which the oath was administered. Stillman, the notary, inadvertently omitted to subscribe his signature to the jurat along side his printed

name, and inadvertently omitted to imprint his metal seal upon the jurat.

It is undisputed that there was no fraud, deception or illegality in connection with the execution of the affidavit or any part of the declaration of candidacy or petition.

The question which this court must determine is whether a declaration of candidacy and petition of a candidate, which is otherwise proper in every way, substantially complies with the requirements of Section 3513.07, Revised Code, where the notary public who administered the oath to the circulator of one part-petition inadvertently omitted to subscribe his handwritten signature to the jurat along side his printed name which he had stamped on the jurat, and inadvertently omitted to imprint his seal upon such jurat.

The pertinent language of Section 3513.07, Revised Code, reads as follows:

"The form of declaration of candidacy and petition of a person desiring to be * * * a candidate for election to an office * * * to be voted for at a primary election shall be *substantially* as follows: * * *" (Emphasis added.)

The candidates have performed every duty and act required of them by law. The circulator has performed every act and duty required of him by law. The notary performed every duty and act required of him by law except those admittedly inadvertent omissions.

The appellee makes no contention that the public policy or public interest requires more for substantial compliance than was done here. The appellee does not claim that any fraud or deception occurred in this case, or is likely to occur in the future by reason of such inadvertent omissions.

In his brief, the appellee asserts no logical or reasonable proposition, based upon a public purpose, public policy or public interest for invalidating this part-petition upon this technical ground. The appellee relies upon the case of *State, ex rel. Andrews,* v. *Board of Elections of Medina County* (1963), 175 Ohio St. 249, for his position.

The factual difference between the *Andrews case* and

the instant case is that in *Andrews* there was no allegation nor any evidence that the part-petition which was challenged contained in the jurat (1) a date, (2) the name or any identification of a notary who might have administered the oath to the circulator of the petition, (3) the identification "notary public," (4) the "limitations of jurisdiction" of a notary, (5) the date of expiration of the commission of a notary. In other words, when the board of elections examined the challenged part-petition in the *Andrews case* there was no evidence that there was anything in the jurat which would lead the board to believe that any person had administered an oath to the circulator nor any identification which would permit the board to promptly seek out a person to determine if he had, in fact, administered the oath to the circulator as required by law.

In the instant case, the jurat is dated and the notary is identified by his name and office printed by his stamp upon the jurat and by the date of expiration of his commission and by the statement of the limitations of his jurisdiction.

The rule expressed in the *Andrews case* should not be extended beyond the facts which appear in the record of that case in order to invalidate the petition in the instant case, because no vital public purpose or public interest is served by such extension.

Absolute compliance with every technicality should not be required in order to constitute *substantial* compliance, unless such complete and absolute conformance to each technical requirement of the printed form serves a public interest and a public purpose.

It can well be argued that when, as in *Andrews*, no date, no name of a notary, no reference to his commission, and no limitation of his jurisdiction appear in the jurat of the notary, it would be an unreasonable burden to require the board of elections to seek out an unknown person, through the circulator or the candidate, and make a determination, based upon evidence taken after the filing, as to whether or not an oath was administered and who administered such oath.

However, in the instant case, the date, the name of the notary, the title of his office, the limits of his jurisdiction and the expiration date of his commission, all identify the notary and represent prima facie evidence of sufficient substantial compliance with the statutory requirements for the board of elections to certify the petition as valid.

In the instant case, no challenge is made to the affidavit of the circulator. The only question concerns a technical defect in the jurat.

A jurat is not part of an affidavit, but is simply a certificate of the notary public administering the oath, which is prima facie evidence of the fact that the affidavit was properly made before such notary.

Black's Law Dictionary (4 Ed.), 990, defines "jurat" as follows: "Certificate of officer or person before whom writing was sworn to."

With regard to "jurat," it is stated in 50 Corpus Juris Secundum, at page 705:

"In common use the term is employed to designate the certificate of a competent administering officer that a writing was sworn to by the person who signed it. It is no part of the oath, but is merely evidence of the fact that the oath was properly taken before the duly authorized officer."

In 2 Ohio Jurisprudence 2d 18, Section 11, it is stated:

"The jurat is simply a certificate evidencing the fact that the affidavit was properly made before a duly authorized officer. Common prudence dictates that a properly executed jurat be attached to every affidavit although, strictly speaking, it is not part of the affidavit, but simply evidence that the affidavit has been properly sworn to. * * *"

With regard to a notary seal, Section 147.04, Revised Code, provides:

"* * * Said seal shall consist of the coat of arms of the state within a circle one inch in diameter and shall be surrounded by the words 'notary public,' 'notarial seal,' or words to that effect, the name of such notary public and the counties for which he is commissioned, or if an attorney at law and commissioned for the whole state, the words

for the 'State of Ohio.' The name of the notary public and the limits of his jurisdiction may, instead of appearing on the seal, be printed, typewritten, or stamped in legible, printed letters, near the signature of such notary public on each document signed by him. * * *''

In 41 Ohio Jurisprudence 2d 5, Section 6, it is provided, with reference to a notary seal:

''* * * The effect of the proviso [Section 147.04] is that he need not have such seal if his name is stamped or printed on the document in a legible manner. Manifestly, if the seal itself is not required to give effect to the official act of the notary, the requirements of the proviso are not essential; and it is to be noted in this respect that the above statutory requirement that the notary shall provide himself with a seal does not make it a condition of the validity of his authentication of an affidavit that he use it. * * *''

The cases of *State, ex rel. Allen,* v. *Board of Elections of Lake County* (1959), 170 Ohio St. 19, and *State, ex rel. Reed,* v. *Malrick* (1956), 165 Ohio St. 483, upon which the appellee relies, are not dispositive of the instant case because in each of those cases the question was whether a candidate could properly act as a notary in taking the acknowledgment of the circulators of such candidate's own petition papers.

Although the statute has been changed, the rationale of the third paragraph of the syllabus in the case of *Sullivan* v. *State, ex rel. O'Connor* (1932), 125 Ohio St. 387, bears upon the question in the instant case. It states:

''Candidates for nomination to offices on county committees are required to comply with all mandatory provisions of the statute, and having so complied by producing petitioners who are of the same political party as the candidate, and such petitioners having acknowledged and made the oath required, the failure of the officer who takes the acknowledgment and administers the oath to petitioners, to legibly sign his name and to print his name below his signature and to give his official designation as such officer, are technical defects which will not invalidate such petition.''

In *State, ex rel. Cline,* v. *Henderson* (1965), 4 Ohio St. 2d 7, the question was whether erroneous dates, entered in the jurats of the notary accompanying the affidavits executed by the candidate in connection with his statement of candidacy appearing on three of six part-petitions, were sufficient to invalidate such part-petitions. In the *per curiam* opinion in that case, at page 10, this court said:

"In the instant case, the only variance from the original was in the dates in the jurats of the notary public. This would not mislead anyone signing the petition. To disqualify a candidate from seeking public office on such a minor technicality, which could easily occur by mistake or inadvertence, would serve no public purpose."

In the case of *State, ex rel. Schwarz,* v. *Hamilton County Board of Elections* (1962), 173 Ohio St. 321, the part-petition referred to therein contained 28 names but the circulator swore in his affidavit that the number was 27. The board of elections determined that all of the signatures on the part-petition were invalid. This court, in deciding the case, stated at page 323:

"* * * we think that the determination made by the board against the validity of the petition was too technical, unreasonable and arbitrary—in short, an abuse of discretion—and that upon the facts which respondent had in its possession it was under the clear legal duty to approve and accept the petition and place relator's name on the primary ballot as a candidate for nomination to the office he seeks."

The instant action, which seeks to prohibit Frances P. Bolton and A. L. DeMaioribus from becoming candidates for delegates to the Republican National Convention to be held in 1968, is based upon the technicality that the notary public inadvertently omitted his signature and the imprint of his seal from the jurat which follows the admittedly valid affidavit of the circulator on one of the candidates' part-petitions.

No challenge is made to the affidavit of the candidates, nor to the affidavit of the circulator. *This is a technical defect in the prima facie proof of compliance with the*

*statute with regard to the jurat of the notary public,* rather than a failure to comply with the statutory requirements for becoming a candidate and for circulating a petition to have a name placed upon the ballot.

The public policy which favors free competitive elections, in which the electorate has the opportunity to make a choice between candidates, outweighs the arguments for absolute compliance with each technical requirement in the petition form, where the statute requires only *substantial* compliance, where, in fact, the only omission cannot possibly mislead any petition signer or elector, where there is no claim of fraud or deception, and where there is sufficient substantial compliance to permit the board of elections, based upon the prima facie evidence appearing on the face of the jurat which is a part of the petition paper, to determine the petition to be valid.

Under such circumstances, where a board of elections declares such a part-petition to be valid, such board does not abuse its discretion and an injunction will not issue to declare such part-petition invalid and prohibit the printing upon the ballot of the names of the candidates contained in such petition.

The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

HERBERT, SCHNEIDER and BROWN, JJ., concur.
ZIMMERMAN and MATTHIAS, JJ., dissent.

TAFT, C. J., concurring. I concur in the judgment but for reasons different from those stated in Judge O'Neill's opinion.

In my opinion, the failure of the notary to sign his name to the jurat on the circulator's affidavit on one of the petition papers in the instant case, represents a failure to comply with a requirement that has been specified by the General Assembly as a material requirement for a candidate's petition. This court so held in *State, ex rel. Andrews,* v. *Board of Elections of Medina County* (1963), 175

Ohio St. 249, 193 N. E. 2d 390, with only one judge dissenting. See also *State, ex rel. Allen,* v. *Board of Elections of Lake County* (1959), 170 Ohio St. 19, 161 N. E. 2d 896, where this court refused to compel a board of elections to accept petitions, where the circulator's affidavit had been notarized by the candidate, and stated in a *per curiam* opinion concurred in by six judges:

"* * * substantial compliance would not warrant complete omission of the jurat of the circulator. Such jurat is a vital and material part of the nominating petition paper, and its inclusion is a condition precedent to the acceptance and validation of a candidate's nomination petition paper * * *."

Such a holding probably follows from Section 3513.07, Revised Code, stating that a petition of the kind here involved "shall be substantially" in the form set out therein, which form expressly provides for the "signature of officer administering oath" to the petition circulator.

I fail to see how *State, ex rel. Cline,* v. *Henderson* (1965), 4 Ohio St. 2d 7, 211 N. E. 2d 54, cited by appellant, is relevant in any way to any question involved in the instant case, except as indicating that this court, by exercising its extraordinary powers in mandamus, will protect a candidate from rejection of his petition where he has fully complied with all statutory requirements. There, the notary had properly signed and sealed the jurat to the candidate's signed declaration on each of six petition papers. The date in the jurat on three was July 22 and the dates on the other three were July 20, 21 and 23. The board rejected the latter three. The court held that the candidate had substantially complied because only one original executed declaration was required by the statute and no one could be mislead by this slight variance in dates on the copies of that original.

The holding in *Sullivan* v. *State, ex rel. O'Connor* (1932), 125 Ohio St. 387, 181 N. E. 805 (that the candidate "had fairly complied with the law" even though the signature of the notary to the circulator's affidavit "was not signed in a legible manner and * * * he failed to note his

official character"), as well as paragraph three of the syllabus of that case, are both based upon the provision in former Section 4785-78, General Code, that "no declaration of candidacy shall be rejected for mere technical defects." See opinion at page 393. As pointed out in *State, ex rel. Lemert,* v. *Board of Elections of Muskingum County* (1948), 149 Ohio St. 211, 215, 78 N. E. 2d 368, our statutes have since been amended to eliminate any such provision.

As to a protest against a candidacy such as those involved in the instant case, the applicable statute, Section 3513.05, Revised Code, now provides that, if the board of elections finds "that such candidate * * * has not fully complied with Sections 3513.01 to 3513.32 * * * his declaration of candidacy and petition shall be determined to be invalid and shall be rejected, otherwise it shall be determined to be valid."

In my dissenting opinion in *State, ex rel. Allen,* v. *Board of Elections of Lake County, supra* (170 Ohio St. 19), at page 21, I suggested that the only purpose of the circulator's affidavit was "to provide prima facie evidence of the facts stated in the authorized form of the affidavit" and that no statute indicated "that proof of such facts can be made only by such an affidavit."

In an apparent answer to that suggestion, the General Assembly thereafter enacted Section 3501.38, which reads in part:

"All * * * nominating petitions * * * shall, in addition to meeting the other specific requirements prescribed in the * * * Revised Code * * * be governed by the following rules:

"* * *

"(E) Every petition paper shall bear the affidavit of the circulator * * *.

"* * *

"(I) No alterations, corrections, or additions may be made to a petition after it is filed in a public office."

As hereinbefore mentioned, Section 3513.07, Revised Code, indicates the necessity for the "signature of officer administering oath" to the circulator as a part of the affidavit that is a part of the petition.

Thus, if the instant case involved an appeal in the ordinary course of the law from the determination of a board of elections, I would be of the opinion that that determination should be reversed. However, after specifying what the Board of Elections should do in making a determination on a protest to a candidacy (the applicable statutory language of Section 3513.05, Revised Code, is quoted above), the General Assembly specifically stated that "such determination shall be final."

Thus, there can be no appeal in the ordinary course of the law from that determination.

However, if a candidate's petition has been rejected by election officials after he has "fully complied" with statutory requirements therefor, courts have given the candidate relief, either by exercising equity power to issue an injunction or prerogative power to issue a writ of mandamus or of prohibition. See, for example, *State, ex rel. Cline,* v. *Henderson, supra* (4 Ohio St. 2d 7), and *State, ex rel. White,* v. *Brown* (1966), 6 Ohio St. 2d 61, 215 N. E. 2d 717.

On the other hand, where there has not been such compliance with all statutory requirements and the election officials have rejected the candidate's petitions, the courts have refused to give the candidate relief in equity, prohibition or mandamus. *State, ex rel. Kroeger,* v. *Leonard* (1949), 151 Ohio St. 197, 84 N. E. 2d 910; *State, ex rel. Andrews,* v. *Board of Elections of Medina County, supra* (175 Ohio St. 249); *State, ex rel. Allen,* v. *Board of Elections of Lake County, supra* (170 Ohio St. 19); *State, ex rel. Ferguson,* v. *Brown* (1962), 173 Ohio St. 317, 181 N. E. 2d 890. They have done this even though the same courts have refused to disturb determinations of election officials to accept a candidate's petitions where the candidate has not fully complied with all statutory requirements. See, for example, *State, ex rel. Patton,* v. *Bazzell* (1954), 161 Ohio St. 344, 119 N. E. 2d 278 (mandamus denied), and *State, ex rel. Hanna,* v. *Milburn* (1959), 170 Ohio St. 9, 161 N. E. 2d 891 (prohibition denied), in each of which facts were substantially the same as in *State, ex rel.*

*Kroeger,* v. *Leonard, supra* (151 Ohio St. 197). As stated on page 11 of the *per curiam* opinion in the *Milburn case:*
"It must be remembered that in the *Kroeger case* the court was *approving* a decision of a board of elections * * *. The test for *reversing* a decision of a board of elections is not necessarily whether this court agrees or disagrees with such decision * * *."

In the instant case, the appellee herein offered in evidence the transcript of the proceedings before the board of elections, which disclosed that the only failure of the two candidates to comply fully with applicable statutory requirements resulted from their failure to have the notary sign the jurat to the circulator's affidavit on one petition paper and attach his seal thereto. This record also discloses that, after the reading and the offering in evidence without objection of an affidavit of Saul Stillman, the notary to the circulator's affidavit, which stated that "all of the legal requirements for such notarization were complied with, that no fraud, deception or illegality occurred in connection with the execution of this affidavit and that the failure of the affiant to affix his signature was due to his oversight," appellee's attorney stated:

"I would agree with the statement that there is no fraud, deception or illegality. Knowing Saul, he would never dream of such a thing in his behalf or being done by him."

The only purpose of a circulator's affidavit is to provide proof of the facts required to be stated therein. Where, as here, the one protesting the candidacy admits the existence of those facts, it seems to me that a rejection of the petitions for failure to authenticate properly the affidavit would represent an exalting of form over substance.

Injunction is an extraordinary equitable remedy. *Perkins* v. *Quaker City* (1956), 165 Ohio St. 120, 133 N. E. 2d 595. It is a familiar maxim of equity that equity regards substance, not form. In giving the extraordinary remedy of injunction in the instant case, it seems to me that the Common Pleas Court and the Court of Appeals have done exactly the opposite. They have regarded form, not

substance. For this reason, my conclusion is that the judgment of the Court of Appeals should be reversed and the injunction dissolved.

In my opinion, this conclusion is fully supported by our decision and the *per curiam* opinion in *State, ex rel. Hanna, v. Milburn, supra* (170 Ohio St. 9).

Thus, a court will not exercise its extraordinary powers in equity, prohibition or mandamus to require a board of elections to adhere to formal requirements which will serve no substantial purpose, although it may, as it did in *Andrews* v. *Board of Elections of Medina County, supra* (175 Ohio St. 249), refuse to interfere with the board's adhering to such requirements.

This does not put a candidate at the mercy of the board of elections. If the candidate fully complies with all statutory requirements and the board determines that his petitions are invalid, the courts will exercise their extraordinary powers in equity, mandamus or prohibition to require the board to hold the petitions valid. *State, ex rel. Cline, v. Henderson, supra* (4 Ohio St. 2d 7); *State, ex rel. White, v. Brown, supra* (6 Ohio St. 2d 61).

However, if the candidate does not so comply, he runs a risk that the board may determine to reject his petition; and, in such instance, a court will ordinarily refuse to interfere with that determination, which the General Assembly has specified shall be "final." That is what this court did in *State, ex rel. Andrews, v. Board of Elections of Medina County, supra* (175 Ohio St. 249).

Herbert, J., concurring. One hundred and seventeen bona fide electors, in good faith, signed petitions to nominate Bolton and DeMaioribus to the office of delegate to the coming Republican National Convention. These conscientious citizens were exercising their right to take part in the processes of their government and sought to nominate two well-qualified delegates to aid in selecting a candidate of the Republican Party for the office of President of our country. An official of the county board of elections omitted to go through the formality of attaching his signature

190

to one paper out of five. This omission did not in any way interfere with the free and honest exercise of the ballot.

I dissented in *State, ex rel. Andrews, v. Board of Elections of Medina County*, 175 Ohio St. 249, for the reason that I believed the exercise of a free and honest ballot was more important than to seize upon a flyspeck defect and thereby cause the disenfranchisement of a great number of honest, conscientious citizens.

Judge Zimmerman, in his dissenting opinion, indicates that he does not have much faith in our county boards of elections and suggests that a candidate "has the responsibility to see that" nominating petitions are in order. If this suggestion were to be followed generally, it would be most interesting to see a number of candidates for state office racing over the state to check thousands of signatures and thousands of other details to see that their particular petitions are in order. This check is made by boards of elections and the Secretary of State. We must trust them. When a slight error or defect occurs that does not in any way interefere with the honest exercise of the right to vote, such defect should be considered harmless.

ZIMMERMAN, J., dissenting. Both the majority and concurring opinions herein labor mightily and at length to validate the challenged nominating part-petition. It is obvious that such petition does not comply with the statutory requirements, and I can see no real distinction between the instant case and that of *State, ex rel. Andrews, v. Board of Elections of Medina County*, 175 Ohio St. 249, 193 N. E. 2d 390. The validation of the challenged part-petition puts the stamp of approval on carelessness. A prospective candidate should examine his nominating petition or petitions before they are filed, and he has the responsibility to see that they substantially comply with statutory mandates, as to form. I do not mean to criticize boards of elections, nor do I suggest that a prospective candidate must personally check the authenticity of the signatures appearing on his petitions, as Judge Herbert implies in his concurring opinion.

MATTHIAS, J., dissenting. I am unalterably opposed to the majority's disposition of this case, especially in light of this court's former ruling in *State, ex rel. Andrews,* v. *Board of Elections of Medina County,* 175 Ohio St. 249, and the clear provisions of the election laws of the state of Ohio.

In the instant case, it is uncontroverted that the circulator's affidavit on the part-petition in question lacks the seal and signature of a notary public, and yet this court finds that there has been substantial compliance with the requirements of Section 3513.07, Revised Code.

In *State, ex rel. Andrews,* v. *Board of Elections of Medina County, supra,* this court denied a writ of mandamus to a petitioner seeking to have his name placed upon the ballot for the office of member of the Board of Education of Medina City School District. The local board of elections had refused to place his name on the ballot because one part-petition filed by petitioner lacked the seal and signature of a notary public on the circulator's affidavit, and without that part-petition there was an insufficient number of valid signatures to qualify petitioner for certification. This court succinctly stated, at page 250:

"As to the third petition paper above referred to, *there has not been a substantial compliance with the mandatory requirements of the statute* (Section 3513.261, Revised Code)." (Emphasis added.)

Section 3513.261, Revised Code, and Section 3513.07, Revised Code, each provide the form with which substantial compliance must be made by a candidate in order to warrant certification by the appropriate board of elections. As to the circulator's affidavit, the forms prescribed are identical and each contains a space designated "Signature of officer administering oath," and below that a space designated "Title of officer."

By its ruling in this case, this court is reading the signature requirement out of the form prescribed by statute.

The issue is not whether Section 147.04, Revised Code, governing notarial acknowledgments, has been complied

with (though I believe that it has not), but rather whether the circulator's affidavit form, prescribed by statute, has been substantially satisfied. That form provides for the *signature* and title of the officer administering the oath.

Section 2319.04, Revised Code, provides, in pertinent part:

"An affidavit may be made in or out of this state before any person authorized to take depositions * * *."

Section 2319.10, Revised Code, provides:

"Depositions may be taken in this state before a judge or the clerk of the Supreme Court, a judge or clerk of the Court of Appeals, a judge or clerk of the Court of Common Pleas, a probate judge, judge of the County Court, notary public, mayor, master commissioner, official stenographer of any court in this state, or any person empowered by a special commission."

Thus, many persons other than notaries may administer the oath required of a circulator and acknowledge his sworn statement. They attest to the fact that they have administered the oath and acknowledged the statement by affixing their signature to the affidavit. They attest to their authority to administer an affidavit by stating their title.

A seal or stamp is not part of the form with which substantial compliance is required by Section 3513.07, Revised Code, but *a signature and the title of the officer who administered the oath to the circulator* is clearly an essential part of that form.

Section 3501.38(I), Revised Code, provides, in part:

"(I) No alterations, corrections, or additions may be made to a petition after it is filed in a public office."

I would construe this section as barring alterations, corrections or additions by oral testimony to cure a patently defective petition the same as it would bar alterations, corrections, or additions by writing or any other means once that petition had been filed in a public office.

In *State, ex rel. Hanna*, v. *Milburn*, 170 Ohio St. 9, this court enunciated the test for reversing (by way of equitable powers) a decision of a board of elections. At page 11, we said:

"* * * The test for *reversing* a decision of a board of elections is not necessarily whether this court agrees or disagrees with such decision, but it *is* whether the decision of the board of elections is procured by fraud or corruption, or whether there has been a flagrant misinterpretation of a statute or a clear disregard of legal provisions applicable thereto. * * *"

This is such a case in that there has been "a clear disregard of legal provisions applicable thereto."

It is undisputed that the failure to affix the signature of the notary in this case was inadvertent. However, the requirement of the signature of the officer administering the oath to the circulator is clearly indicated by Section 3513.07, Revised Code, in order to substantially comply therewith.

I cannot agree with the concurring opinion that we would be "exalting form over substance" in affirming the court below. I cannot condone allowance of a stamp to substitute for a signature. The former is easily duplicated, whereas the latter is not. A seal only identifies the official capacity of the person administering the oath and a printed stamp allows easy identification of the signature, *but the signature is the only guarantee of the presence of the officer taking the affidavit.*

I, therefore, respectfully dissent.