THE STATE, EX REL. FITE, *v.* SADDLER, DIRECTOR, SCIOTO COUNTY BOARD OF ELECTIONS, ET AL.

[Cite as *State, ex rel. Fite, v. Saddler* (1991), 62 Ohio St.3d 170.]

(No. 91–1238—Submitted and decided October 9, 1991—
Opinion announced November 14, 1991.)

*Mark S. Froehlich,* for relator.

*Lynn Alan Grimshaw,* Prosecuting Attorney, and *Mark A. Leventhal,* for respondents.

*Richard T. Schisler, pro se,* urging denial of writ for *amicus curiae.*

*Per Curiam.* We grant respondents' motion for summary judgment and deny the writ.

Respondents first state that summary judgment is appropriate because the only factual issue in dispute—whether Schisler learned that his filing fee was deficient on the evening of February 21, 1991, the last day for filing, or on the next day, February 22, 1991—is immaterial. We agree and find that there is no genuine issue as to any material fact. Civ.R. 56(C).

Respondents next argue that, as no quasi-judicial act took place, prohibition is an improper remedy. They cite several cases in which this court has declared that the placement of *issues* on the ballot is a ministerial, and not a quasi-judicial, act. However, in *State, ex rel. Newell, v. Brown* (1954), 162 Ohio St. 147, 54 O.O. 392, 122 N.E.2d 105, at paragraph two of the syllabus, we stated:

"Prohibition is an appropriate proceeding to prevent the Secretary of State or a board of elections from placing on a ballot the names of candidates, which names may not lawfully be placed thereon. * * * [Citations omitted.]"

Moreover, the writ has also been allowed in cases challenging a candidacy on grounds other than the sufficiency of the petitions. See *State, ex rel. Kendzia, v. Carney* (1969), 20 Ohio St.2d 37, 49 O.O.2d 239, 252 N.E.2d 639, certiorari denied (1970), 399 U.S. 926, 90 S.Ct. 2235, 26 L.Ed.2d 792 (criminal conviction as a bar to candidacy); *State, ex rel. Graham, v. Cuyahoga Cty. Bd. of Elections* (1979), 60 Ohio St.2d 123, 14 O.O.3d 349, 397 N.E.2d 1204 (candidate untruthfully signed affidavit that he had not voted as a member of a different political party within preceding four years).

It is admitted that respondents did not hear relator's protest about the late filing fee, but simply ignored it and accepted the late filing of the balance of the fee. Clearly, the protest concerning the fee raised the claim that respondents were about to place the name of a candidate on the ballot who was not entitled to be there, and the failure of respondents to grant a hearing thereon does not make an action in prohibition improper under *State, ex rel. Newell, supra.* Accordingly, we determine that by ignoring the relator's protest, the respondents found that the late filing of the total fee was inconsequential.

Next, respondents argue that this issue has already been decided by *State, ex rel. Schulman, v. Cuyahoga Cty. Bd. of Elections* (1957), 167 Ohio St. 19, 3 O.O.2d 462, 145 N.E.2d 666. In *Schulman,* we refused to issue a writ of mandamus compelling the respondent-board to omit from the ballot the names of certain candidates for city office who paid only a partial filing fee. In that case, as in the instant case, the filing fee was one-half of one percent of the salary for the office; however, there, unlike here, the city council had passed an ordinance raising the salary of the office, effective January 1, 1958. The ordinance was passed on July 1, 1957, and the last day for filing petitions and paying the fee was August 7, 1957. No one informed the board of elections of the change in salary until August 5. Because of the confusion created as to whether the one-half of one percent related to the salary at the time of filing or the salary at the time of taking office, some candidates paid one-half of one percent of the former and some one-half of one percent of the latter. Determining that the latter, higher fee was correct, the board so notified the

candidates on the last day for filing. One candidate filed an additional fee on that day, but one filed the additional fee the following day, and another the day after that. Based on these facts, the court of appeals refused to grant the writ, and this court affirmed, stating:

"In view of the cumulative effect of this confusion as to both the law and the facts, was the Court of Appeals in error in refusing to hold that the law 'specially enjoins' a duty on the respondent board of elections to strike the names of the three candidates * * * from the ballot? Remembering that historically mandamus originated as a high prerogative writ involving the exercise of sound judicial discretion, this court is of the view that the judgment of the Court of Appeals was correct and that any other result would be unwarranted by the facts or the law." 167 Ohio St. at 21, 3 O.O.2d at 463, 145 N.E.2d at 668.

*Schulman* was based on the confusion created by the change in the salary, a circumstance not present in the instant case. Accordingly, we find that *Schulman* is not a persuasive case on which to grant the motion for summary judgment.

Respondents next argue that compliance with every technical election requirement is not necessary to the validity of nominating petitions, citing *Stern v. Cuyahoga Cty. Bd. of Elections* (1968), 14 Ohio St.2d 175, 43 O.O.2d 286, 237 N.E.2d 313. In *Stern*, we held that the failure of a notary public to sign his name to the jurat notarizing the circulator's affidavit on one of a candidate's part-petitions would not invalidate the candidacy. Although *Stern* dealt only with substantial compliance with statutory requirements governing the declaration of candidacy and petition papers of a candidate, it stated an important principle: ·

"Absolute compliance with every technicality should not be required * * * unless such complete and absolute conformance to each technical requirement * * * serves a public interest and a public purpose." 14 Ohio St.2d at 180, 43 O.O.2d at 289, 237 N.E.2d at 317.

Section 144(h) of the Portsmouth Charter states:

"All separate papers comprising a nominating petition of a candidate shall be assembled and filed at the same time as one instrument with the Board of Elections of Scioto County, Ohio, not later than 6:30 p.m. of the seventy-fifth day before the date of the primary election as established by the general election laws of the State of Ohio, in the odd numbered years. At the time of filing a nominating petition for an office as herein provided, the candidate designated therein shall pay to the election officials with whom it is filed a fee of one half of one percent of the annual salary of such office. Candidates whose names are written on the ballot, as provided by the general election

laws, and who are nominated, shall pay the same fees as candidates who file their nominating petitions. Payment of this fee by such candidates shall be deemed a condition precedent to granting their certificates of nomination. All such fees shall forthwith be paid by the officials receiving them into the Treasury of the County to the credit of the General Fund of the County; and in no case shall the filing fee be returned to a candidate."

It is evident that payment of the fee is merely to defray county expenses. As such, it serves neither the public interest nor a public purpose to enforce literally the requirement to pay the fee "[a]t the time of filing a nominating petition," when the result would be to stop a free, competitive election.

Accordingly, we grant respondents' motion for summary judgment and deny the writ.

*Writ denied.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.