OPINION
{¶ 1} This matter is before us on the appeal of James and Karin Locker, pro se, from an order granting a summary judgment and decree in foreclosure to Chase Manhattan Mortgage Corporation (Chase). The foreclosure was based on the Lockers' failure to make payments on a mortgage note.
 {¶ 2} On appeal, the Lockers have filed a two page brief that contains neither the content nor the format required by App. R. 16. In addition, the entirety of their brief consists of a list of six points, which we assume are intended to be assignments of error. These six points, repeated verbatim, but corrected for some misspelling, punctuation, and capitalization errors, are as follows:
 {¶ 3} "I. Trial judge ruled in error allowing as evidence altered documents in the form of affidavits through Plaintiff(s) [sic] counsel;
 {¶ 4} "II. That Plaintiff(s) never provided any evidence other than altered documents, as evidence that a default exist [sic] or that Plaintiff(s) are indeed the valid lienholder as argued by the Defendant(s);
 {¶ 5} "III. That Defendant(s) have reason to believe that the judge's bailiff and Plaintiff(s) [sic] counsel discussed and decided [the] case on April 17, 2003, for [the] bailiff attempted in January of 2003 to do the same by phone with Defendant and attorney Petersmann [. The] judge was simply to forward the decree for signature and did so;
 {¶ 6} "IV. Defendant(s) were notified by phone through Plaintiff(s) counsel of judgment in violation of Rule 30 * * *;
 {¶ 7} "V. That Plaintiff(s) through numerous motions, never proved evidence sufficient to grant summary judgment [. A]t no time was a valid note or document indicating transfer of a note * * * presented as evidence. Defendant(s) always questioned Plaintiff(s) [sic] accusations and altered documents:
 {¶ 8} "VI. That trial Judge denied Defendant(s) their due process rights to trial set for May 5, 2003, 9:00 a.m., by allowing altered evidence [and] insufficient evidence, [and by allowing] the bailiff to hear and decide [the] case by phone with Plaintiff(s) [sic] counsel."
 {¶ 9} After considering the record and applicable law, we find the assignments of error without merit. Accordingly, the trial court judgment will be affirmed.
 I {¶ 10} As a preliminary matter, we note that assignments of error three and four rely on allegations of facts that are not in the record. Specifically, the Lockers do not point to facts of record, nor did we find anything in the record to indicate that either the court or its employees made inappropriate contact with any party to this action. Consequently, we reject, and will not further consider these assignments of error. An appellate court is limited to reviewing the record, and will disregard alleged facts that are not of record in the trial court. See, e.g.,Julian Investments, Inc. v. Dudley (Feb. 12, 1999), Greene App. No. 98-CA-85, 1999 WL 64227, *3, and In re Gordon (July 20, 2001), Montgomery App. No. 18742, 2001-Ohio-1546, 2001 WL 814984, *2.
 {¶ 11} The remaining assignments of error (one, two, five, and six) all deal with "altered documents," and will be considered together. The facts pertinent to this issue are as follows.
 {¶ 12} Chase filed the complaint for foreclosure on May 1, 2002, alleging that it held and owned a note on which the Lockers owed $76,200.87, with interest at 8% per annum since October 1, 2001. The complaint additionally alleged that the note was in default, and that a copy of the note was not available for attachment. However, Chase did attach a copy of the mortgage that was filed with the Montgomery County Recorder on September 17, 1998. This mortgage was given by the Lockers to First Mortgage Banc Corporation, to secure a loan of $78,400. First Mortgage assigned the mortgage to Flagstar Bank, which, in turn, assigned the mortgage to Chase. These assignments were filed with the Montgomery County Recorder and were also attached to the complaint.
 {¶ 13} Subsequently, the Lockers filed a pro se answer, denying paragraphs one and three of the complaint as "not true and complete" statements, and neither admitting nor denying paragraphs two and four. They did not raise any affirmative defenses.
 {¶ 14} On October 28, 2002, Chase filed a motion for summary judgment. At that point, the mortgage payments had been in default for almost a year. In support of the motion, Chase attached the affidavit of its assistant secretary, David Lovett, who stated that he had custody of and personal knowledge of company accounts, and specifically of the account of James and Karin Locker. Lovett testified that Chase held the note and mortgage that were the subjects of the foreclosure action. He also identified the mortgage documents, and said that the Lockers had defaulted in payment under the terms of the note and mortgage. According to Lovett, amounts for the November 1, 2001 payment and all payments thereafter were due, resulting in a principal balance of $76,200.87, together with interest from October 1, 2001, at 8% per annum. The note was not attached to the affidavit, as it was apparently still unavailable.
 {¶ 15} The Lockers responded to the summary judgment motion, but did not file affidavits or any type of documentary evidence. Instead, they simply asked that the motion be denied because Chase had failed to provide a copy of the mortgage note. They also claimed the default or payment dates were contradictory, in that the complaint listed a date of October 1, 2001, while the date referenced in the motion was November 1, 2001.
 {¶ 16} The trial court overruled the motion for summary judgment because it was not able to review the terms of the note. The court then issued a final pre-trial order, setting the matter for trial on May 5, 2003, and establishing a March 3, 2003 deadline for summary judgment motions. Consistent with the deadline, Chase filed a second motion for summary judgment on March 3, 2003. This time, Chase did attach the note. However, a discrepancy existed between the affiant named in the preamble and the individual who signed the affidavit.
 {¶ 17} Specifically, the preamble of the affidavit stated, "Now comes Heidi A. Miller, who first being duly sworn, states as follows." This was followed by a paragraph indicating that the affiant was the assistant secretary of Chase, and was the individual who had custody and personal knowledge of the company accounts. The next paragraph of the affidavit identified the note and stated that it was attached as Exhibit A. The affidavit was not signed by Miller, however. Instead, it was signed by David Lovett, who had signed the affidavit that was filed with the first summary judgment motion. The Miller/Lovett affidavit was also a facsimile copy. Chase did say in the motion that it would file the original affidavit as soon as it was received. Additionally, the day of the month was omitted from the jurat, i.e., the notary indicated that the affidavit was signed in February, 2003, but neglected to fill in the specific date.
 {¶ 18} Once again, the Lockers responded to the summary judgment motion without submitting affidavits or documentary evidence. In particular, they did not refute the claim that they were in default, nor did they provide the court with any proof of payment on the debt. Instead, they focused once more on the alleged discrepancy in dates of default or payment. They also argued (without submitting proof) that a discrepancy in figures existed. This contention was based on a tax form that allegedly listed the loan balance as $75,929.12, plus $2,029.33 interest. The Lockers contrasted this with the original amount sought in the complaint, i.e, $76,200.87.
 {¶ 19} Several days later, Chase filed the original affidavit that Lovett had signed. On this document, Heidi Miller's name was crossed out, and David Lovett's name was typed in the preamble as the affiant. A comment was also added to the affidavit, indicating that David Lovett had given telephone approval for the amendment.
 {¶ 20} The Lockers then filed a second reply to the motion for summary judgment. They again did not submit any evidence to the court. Instead, they claimed the affidavit was unreliable because it had been altered and was not completely filled out by a notary. Subsequently, Chase received court approval to file a response to the Lockers' memorandum. Among other things, Chase claimed that the change in the affidavit was not substantive and was done merely from an abundance of caution.
 {¶ 21} Ultimately, the trial court granted summary judgment against the Lockers and a decree in foreclosure. This appeal then followed. As we indicated, the Lockers claim that the trial court erred when it relied on altered documents.
 {¶ 22} Summary judgment is appropriately granted under Civ. R. 56 where a trial court finds: "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64, 66. Concerning the form of affidavits, Civ. R. 56(E) provides that:
 {¶ 23} "Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit. Sworn or certified copies of all papers or parts of papers referred to in an affidavit shall be attached to or served with the affidavit. The court may permit affidavits to be supplemented or opposed by depositions or by further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the party does not so respond, summary judgment, if appropriate, shall be entered against the party."
 {¶ 24} After reviewing the materials filed below, we find the defects to be ones of form, not substance. The first defect is the missing day of the month in the jurat. However, the jurat is not part of the affidavit, but is simply the certificate of the notary who administered the oath. Stern v. Board of Elections of Cuyahoga County
(1968), 14 Ohio St.2d 175, paragraph one of the syllabus. In Stern, the Ohio Supreme Court refused to invalidate election petitions that a notary had failed to sign. The notary also forgot to imprint the affidavit with his seal. Id. at 178-79. However, the court did not find these defects substantial.
 {¶ 25} Similarly, in State v. Johnson (Oct. 24, 1997), Darke App. No. 96CA1427, 1997 WL 666168, we held that a "scrivener's error" was inconsequential and did not invalidate an affidavit. 1997 WL 666168, *5. The error in question involved a discrepancy between the preamble and the jurat. Specifically, the preamble said the site of the oath was in a particular county, but the notary swore in the jurat that the affidavit was signed in a different county. Id. See, also, Mid-American Nat. Bank Trust Co. v. Gymnastics Internat'l., Inc. (1982), 6 Ohio App.3d 11,13-14 (indicating that substantial compliance with acknowledgment requirements is sufficient).
 {¶ 26} In the present case, the omission of the date is a "scrivener's error" and does not invalidate the affidavit. Although the specific day of the month was omitted, the notary did indicate that the affidavit was signed in February, 2003. This was adequate for substantial compliance, and was not misleading. Admittedly, Chase should have paid better attention to detail, but the omission is not serious enough to invalidate the affidavit. We also note that the Lockers have not identified how they were prejudiced by the omission of the date.
 {¶ 27} The second defect is the incorrect identification of the affiant. This was also an obvious clerical error and does not invalidate the affidavit. "An affidavit is a written declaration under oath, made without notice to the adverse party." R.C. 2319.02. However, "the format of the affidavit does not affect the existence of facts based upon the affiant's personal knowledge." Boros v. O'Konski (Sept. 24, 1993), Lucas App. No. L-92-358, 1993 WL 372240, *4. Instead, "[e]ach individual statement must be examined to make this determination." Id.
 {¶ 28} After examining the affidavits filed in this case, we find that the individual statements in the affidavits purport to be based on the personal knowledge of the person who signed them (David Lovett). We also find no genuine issues of material fact that would preclude summary judgment.
 {¶ 29} Notably, the affidavit filed in support of the original motion for summary judgment contains no defects in form, and is signed by David Lovett. Lovett is also the person who signed the second affidavit. In both affidavits, Lovett swore that he was the assistant secretary of Chase, and that he had custody and personal knowledge of Chase's accounts, including the Lockers' account. Significantly, the Lockers have never presented any evidence disputing these facts.
 {¶ 30} Lovett additionally stated in the first affidavit that the Lockers had defaulted on their note and owed $76,200.87, with interest, from October 1, 2001, at 8% interest per annum. Again, the Lockers have not submitted any evidence disputing these facts. Such evidence would have been easy to provide. Presumably, the Lockers have proof of payment like cancelled checks, bank statements, or receipts that could have been attached to an affidavit. However, they failed to provide the trial court with any of these items. Unsubstantiated allegations about discrepancies do not raise genuine issues of material fact.
 {¶ 31} Furthermore, the only real purpose of the second affidavit and motion for summary judgment was to furnish the trial court with a copy of the note. Accordingly, the mortgage note was identified in the second affidavit and was attached as an exhibit. Because Lovett was described in both affidavits as the assistant secretary of Chase, and as the person who had custody of and personal knowledge about the pertinent documents, the error as to the affiant's name in the second affidavit was not substantial, and lacked the capacity to mislead anyone. Again, the Lockers did not deny signing the note, did not dispute the content of the note, and did not give the court any proof that they made the required payments.
 {¶ 32} As we stressed earlier, parties opposing summary judgment may not rest on the mere allegations or denials of their pleadings. See Civ. R. 56(E). Faced with the affidavits and documents filed by Chase, the Lockers had to establish by way of evidence, not statements in pleadings or memoranda, that genuine issues of fact remained for trial. This, they failed to do. As a result, the summary judgment on foreclosure was properly granted, and assignments of error one, two, five, and six are without merit.
 {¶ 33} As an additional matter, we note that Chase has filed two motions during this appeal. In the first, Chase has asked for permission to supplement the record with trial court records, including an entry lifting a stay (due to the Lockers' failure to post a supersedeas bond), and an entry confirming the sale of the foreclosed property. In the second motion, Chase has asked that the appeal be dismissed because it is moot. Specifically, the property has now been sold for $78,000. The proceeds have also been distributed, and Chase has waived any deficiency judgment.
 {¶ 34} The Lockers have not opposed the motion to supplement. They do oppose the motion to dismiss. In responding to the motion to dismiss, the Lockers first contend that the trial court did not grant a stay. However, this is incorrect. The court did grant a stay, upon the condition that the Lockers post a supersedeas bond in the amount of $152,401.71 (twice the amount of the judgment principal amount) within two weeks of the execution of the entry. Since no bond was filed, the property was sold and the proceeds were distributed pursuant to a journal entry filed on October 29, 2003.
 {¶ 35} In asking for dismissal, Chase focuses on the fact that the Lockers could have preserved their appeal rights by posting the supersedeas bond that was required as a condition of the stay. Because the Lockers failed to post bond, Chase argues that they should be considered to have voluntarily satisfied the judgment. In this regard, Chase relies on authority holding that:
 {¶ 36} "It is a well-established principle of law that a satisfaction of judgment renders an appeal from that judgment moot. `"Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, and fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment."' "Blodgett v. Blodgett, (1990), 49 Ohio St.3d 243, 245
(citations omitted).
 {¶ 37} In Blodgett, the Ohio Supreme Court also rejected the proposition that a party may avoid satisfaction of a judgment on the grounds that he or she cannot afford to wait for the outcome of an appeal. Id. at 246. Although Chase does not directly mention the Lockers' inability to pay the supersedeas bond, the clear implication of its argument is that under Blodgett, inability to pay would not prevent a finding that the Lockers "voluntarily" satisfied the judgment and mooted the appeal.
 {¶ 38} We disagree. In the first place, the circumstances inBlodgett were different. The appellant in Blodgett signed and executed a satisfaction of judgment in exchange for the release of $2,765,000 from escrow and her ex-husband's execution of a deed to the family home. Id. at 244. This occurred while the appeal was pending, but the appellate court did not dismiss the appeal. The Ohio Supreme Court held that the appellate court erred, because the appellant waived the right to continue with the appeal when she executed the satisfaction of judgment. Id. at 245.
 {¶ 39} The pertinent issue the Ohio Supreme Court considered was whether the appellant could set aside her agreement that the judgment against her ex-husband had been satisfied. As a ground for setting the agreement aside, the appellant claimed economic duress, in that she found herself in financial distress and needed the money. Id. at 245. However, the court held that "[t]o avoid a contract on the basis of duress, a party must prove coercion by the other party to the contract. It is not enough to show that one assented merely because of difficult circumstances that are not the fault of the other party." Id. at syllabus. Because the other party to the agreement (the ex-husband) did not cause the financial problems, the Ohio Supreme Court held that the agreement of satisfaction could not be set aside. In this context, the court commented that:
 {¶ 40} "[w]e decline to accept the proposition that if an appellant executes a satisfaction of judgment merely because she cannot afford to wait for the outcome of an appeal, that satisfaction of judgment may be subsequently avoided. Almost every settlement agreement contains some modicum of coercion or duress. An appeal or prospect of a trial always involves a degree of risk to both parties. The law encourages settlement of disputes. By executing the satisfaction of judgment, Nancy [the appellant] could be sure she collected $2,765,000. If she did not execute the document, the judgment awarded her by the trial court remained subject to the risk that William [the ex-husband] would convince the court of appeals to enforce the antenuptial agreement. It is noteworthy that Nancy made her choice with the benefit of the advice of counsel." Id. at 246-47.
 {¶ 41} In contrast, the present case does not involve a contract or agreement that a judgment has been satisfied or settled. Although that distinction should dispose of the matter, we have previously construedBlodgett as establishing a narrow definition of "involuntariness." PoppaBuilders, Inc. v. Campbell (1997), 118 Ohio App.3d 251, 254-255. InPoppa, we found an appeal moot where the appellant paid the full amount of the judgment and did not attempt to obtain a stay. Id. at 254-55. In particular, we agreed with the Eleventh District Court of Appeals thatBlodgett stood:
 {¶ 42} "`for the proposition that a determination as to whether an appellant has voluntarily satisfied a judgment cannot be based upon economic considerations, unless certain actions by the nonappealing party constitute economic duress, i.e., an appellant's failure to obtain a stay cannot be predicated upon her own financial difficulties. Second, the wording of the opinion supports the inference that a finding of involuntariness cannot be based upon the initiation of enforcement proceedings by the nonappealing party, i.e., as used in this context, duress cannot be caused by the enforcement of a legal right.'" Id. at 254, quoting Hagood v. Gail (1995),105 Ohio App.3d 780.
 {¶ 43} We still adhere to this definition of "involuntariness," although we do note that an extremely rigid application could, in some instances, unfairly deprive individuals of a right to appeal. We need not address that issue, however, because Blodgett is not controlling.Blodgett was not a foreclosure action; instead, it was a divorce case in which the appellant accepted the full amount of a marital award and signed a satisfaction of judgment. 49 Ohio St.3d at 244. Likewise, inHagood, the appellant accepted the full amount of a money judgment in her favor ($560,000). 105 Ohio App.3d at 784. And finally, Poppa involved a money judgment against a property owner for construction costs. The property owner then chose to pay the judgment while the appeal was pending. 118 Ohio App.3d at 252.
 {¶ 44} In the context of foreclosure actions, the Sixth District Court of Appeals has held that payment of a judgment is involuntary after an order of sale is issued. See MIF Realty L.P. v. K.E.J. Corp. (May 19, 1995), Wood App. No. 94WD059, 1995 WL 311365, *2. Accordingly, the Sixth District refused to moot an appeal where the appellant had applied for a stay of the foreclosure order, but could not post bond. Id. at *2. The Sixth District's decision was based on the fact that, by statute, debtors may still obtain relief in the form of restitution from judgment creditors, even if the foreclosed property has been sold. Id., relying on R.C. 2329.45. See, also, Chupp v. Thomas (Dec. 8, 1997), Huron App. No. H-97-027, 1997 WL 796532, *2 (denying a motion to dismiss an appeal where the foreclosed property was sold, based on the statutory provisions in R.C. 2329.45 and R.C. 2325.03), and Equibank v. Rivera (Jan. 22, 1998), Cuyahoga App. No. 72225, 1998 WL 23814 (indicating that if an order of foreclosure is appealed, the appeal may not be moot, even though the sale has been confirmed).
 {¶ 45} The statutes in question protect a good-faith purchaser of property, and also allow a remedy for debtors after property has been foreclosed and title has passed. In this regard, R.C. 2329.45 provides that:
 {¶ 46} "[i]f a judgment in satisfaction of which lands, or tenements are sold, is reversed, such reversal shall not defeat or affect the title of the purchaser. In such case restitution must be made by the judgment creditor of the money for which such lands or tenements were sold, with interest from the day of sale."
 {¶ 47} Similarly, R.C. 2325.03 provides that title to property passing to a purchaser in good faith (including a purchaser at a duly confirmed judicial sale) is unaffected by an attack on the final judgment involving the property. Consequently, even though the Lockers' property has been sold, they could still potentially obtain a remedy from Chase, if the summary judgment decision were to be reversed. Although we have decided not to reverse the summary judgment decision, that does not mean the appeal is moot.
 {¶ 48} We note that the Eleventh District Court of Appeals has held otherwise, finding an appeal moot where the foreclosed property was sold. See Alegis Group, L.P. v. Allen, Portage App. No. 2002-P-0026, 2003-Ohio-3501. However, the appellant in Alegis failed to file a timely notice of appeal from the foreclosure order. The notice of appeal was filed six weeks later, on the same day the property was sold. At that time, the Eleventh District Court of Appeals granted a stay of the distribution to decide if issues relating to the validity of the mortgage were moot. Id. at ¶ 8. Because the foreclosure judgment was a final appealable order, and was not timely appealed, the Eleventh District concluded that any decision about its validity would be advisory only. Id. at ¶ 14. The court also observed that the appellant had sufficient time to seek a stay before the sheriff's sale took place, but failed to do so. Id.
 {¶ 49} If the facts in the present case were similar to those inAlegis Group, we would find the appeal moot. However, the Lockers have timely appealed the foreclosure judgment, and they could still have obtained relief even though the property has been sold. Therefore, an opinion on the merits would not be advisory only, and the appeal is not moot.
 {¶ 50} In light of the preceding discussion, the motion to supplement the record is granted, and the motion to dismiss the appeal is overruled. It is so ordered. Further, assignments of error one, two, five, and six are overruled, and assignments of error three and four are rejected because they are based on facts not in the record. Accordingly, the judgment of the trial court is affirmed.
Fain, P.J. and Grady, J., concur.