[This decision has been published in *Ohio Official Reports* at 93 Ohio St.3d 511.]

STUTZMAN *v.* MADISON COUNTY BOARD OF ELECTIONS ET AL.

[Cite as *Stutzman v. Madison Cty. Bd. of Elections*, 2001-Ohio-1624.]

*Elections—Prohibition—Writ sought to prevent Madison County Board of Elections and its members from submitting Ordinance No. 06-01 to the Plain City electors at the November 6, 2001 general election—Writ denied, when.*

(No. 01-1669—Submitted October 2, 2001—Decided October 11, 2001.)

IN PROHIBITION.

_____

*Lundberg Stratton, J.*

{¶ 1} On April 23, 2001, the Council of the Village of Plain City, Ohio, enacted Ordinance No. 06-01, which rezones approximately 89.425 acres of land owned by relator, Henry J. Stutzman, to RS3 Single Family Residential District. The title of Ordinance No. 06-01 is:

"**AN ORDINANCE AMENDING THE ZONING MAP OF THE VILLAGE OF PLAIN CITY, OHIO, AT THE APPLICATION OF DOMINION HOMES, AS TO APPROXIMATELY 89.425 ACRES OF LAND LOCATED WEST OF U.S. ROUTE 42 AND SOUTH OF PROPERTY OWNED BY HOMEWOOD HOMES, INC.**" (Boldface *sic*.)

{¶ 2} On May 10, 2001, a referendum petition on Ordinance No. 06-01 was filed with the Plain City Clerk-Treasurer. The petitioners requested that Ordinance No. 06-01 be submitted to the village electors for their approval or rejection at the November 6, 2001 general election. The referendum petition specified:

"The following is a full and correct copy of the title and number of the Ordinance:

"**Ordinance No. 06-01**

**"AN ORDINANCE AMENDING THE ZONING MAP OF THE VILLAGE OF PLAIN CITY, OHIO, AT THE APPLICATION OF DOMINION HOMES, AS TO APPROXIMATELY 89.45 ACRES OF LAND LOCATED WEST OF U.S. ROUTE 42 AND SOUTH OF PROPERTY OWNED BY HOMEWOOD HOMES INC."** (Boldface *sic*.)

{¶ 3} The referendum petition, printed on a form prescribed by the Secretary of State of Ohio in November 1996, also contained the following statement:

**"THE PENALTY FOR ELECTION FALSIFICATION IS IMPRISONMENT FOR NOT MORE THAN SIX MONTHS OR A FINE OF NOT MORE THAN $1,000, OR BOTH."** (Boldface *sic*.)

{¶ 4} After respondent Madison County Board of Elections ("board") verified that the referendum petition contained sufficient valid signatures, the Plain City Clerk-Treasurer certified the petition to the board for placement of the referendum on Ordinance No. 06-01 on the November 6, 2001 general election ballot.

{¶ 5} On August 30, 2001, Stutzman filed a written protest with the board challenging the referendum petition on Ordinance No. 06-01. Stutzman contended that the petition was defective because it failed to state the correct title of the ordinance in that the acreage listed on the petition (89.45) differed from the acreage in the ordinance (89.425) and the petition did not include a comma in the name of the owner of property to the north of the rezoned property ("Homewood Homes, Inc."). Stutzman further claimed that the referendum petition failed to contain the mandatory election falsification language set forth in R.C. 3599.36.

{¶ 6} On September 12, 2001, the board held a hearing on Stutzman's protest and then took the matter under advisement. On September 13, the board issued a decision denying Stutzman's protest. The board concluded that the misstatements of the acreage and omission of the comma in Homewood Homes,

Inc. were not defects requiring rejection of the petition because there was no evidence that the petition conveyed a confusing or mistaken impression about the substance of the zoning ordinance that was the subject of the referendum petition. The board further concluded that the referendum petition contained the election falsification language required by law and that the "new election falsification language referred to by [the] protest took effect on August 28, 2001."

{¶ 7} On September 14, 2001, *i.e.*, only one day after the board's decision, Stutzman filed this expedited election action for a writ of prohibition to prevent respondents, the board and its members, from submitting to the Plain City electorate the referendum on Ordinance No. 06-01. Respondents filed a motion to dismiss,[1] and after Stutzman filed evidence and a merit brief, respondents failed to file a merit brief, which was due on Friday, September 28, 2001. See S.Ct.Prac.R. X(9).

{¶ 8} This cause is now before the court for a consideration of the merits.

{¶ 9} Stutzman requests a writ of prohibition to prevent the submission of Ordinance No. 06-01 to the Plain City electors at the November 6, 2001 general election. In order to be entitled to a writ of prohibition, Stutzman must establish that (1) the board is about to exercise judicial or quasi-judicial power, (2) the exercise of that power is unauthorized by law, and (3) denial of the writ will cause injury for which no other adequate remedy in the ordinary course of law exists. *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 238, 241, 736 N.E.2d 893, 896. It is uncontroverted that Stutzman has satisfied the first and third of these requirements, so the dispositive issue is whether Stutzman established that the board's exercise of quasi-judicial authority in denying the protest was unauthorized by law.

---

1. We note that respondents' motion to dismiss is inappropriate in expedited election cases, see *State ex rel. Ryant Commt. v. Lorain Cty. Bd. of Elections* (1999), 86 Ohio St.3d 107, 111, 712 N.E.2d 696, 700, and we will therefore proceed to consider the merits of this cause.

**{¶ 10}** In determining if Stutzman established this requirement, the applicable standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions in denying Stutzman's protest. *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132, 135-136, 717 N.E.2d 1091, 1095. Stutzman asserts that the board abused its discretion and acted in clear disregard of applicable legal provisions in denying the protest. For the reasons that follow, we hold that the board neither abused its discretion nor clearly disregarded applicable law in denying Stutzman's protest and deny Stutzman's request for extraordinary relief in prohibition.

R.C. 731.31; Full and Correct Copy of Title of the Ordinance

**{¶ 11}** Stutzman initially contends that the board abused its discretion and acted in clear disregard of R.C. 731.31 by upholding the validity of the referendum petition although it did not include "a full and correct copy of the title of the ordinance or other measure sought to be referred."

**{¶ 12}** R.C. 731.31 provides that "each part of any referendum petition shall contain * * * a full and correct copy of the title of the ordinance or other measure sought to be referred." Stutzman claims that R.C. 731.31 requires strict compliance and that the petition did not strictly comply with R.C. 731.31 because it misstated the acreage involved in the title of the ordinance as 89.45 acres instead of the 89.425 acres actually listed in the title of the ordinance.

**{¶ 13}** In general, election statutes in Ohio are mandatory and require strict compliance unless the statute specifically permits substantial compliance. *State ex rel. Wilson v. Hisrich* (1994), 69 Ohio St.3d 13, 16, 630 N.E.2d 319, 322; *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1992), 65 Ohio St.3d 167, 169, 602 N.E.2d 615, 617. In accordance with this general rule, because R.C. 731.31 does not expressly allow substantial compliance, we normally require strict compliance with it, *Crossman Communities*, 87 Ohio St.3d at 137,

717 N.E.2d at 1096, including the requirement that the petition contain a full and correct copy of the title of the ordinance. *State ex rel. Esch v. Lake Cty. Bd. of Elections* (1991), 61 Ohio St.3d 595, 597, 575 N.E.2d 835, 836-837.

{¶ 14} Nevertheless, we have also at times held that courts must avoid unduly technical interpretations that impede public policy in election cases. See, *e.g., State ex rel. Ruehlmann v. Luken* (1992), 65 Ohio St.3d 1, 3, 598 N.E.2d 1149, 1151. The policy involved here is the preeminent constitutional right of referendum "reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action." Section 1f, Article II of the Ohio Constitution. We must liberally construe provisions for municipal referendum so as to permit the exercise of the power and to promote rather than prevent or obstruct the object sought to be attained. See *State ex rel. Rose v. Lorain Cty. Bd. of Elections* (2000), 90 Ohio St.3d 229, 230-231, 736 N.E.2d 886, 888; *State ex rel. Oster v. Lorain Cty. Bd. of Elections* (2001), 93 Ohio St.3d 480, 756 N.E.2d 649.

{¶ 15} In applying these competing considerations to the R.C. 731.31 requirement that referendum petitions contain a "full and correct copy of the title of the ordinance," we are guided by the precept that our paramount concern in construing any statutory requirement is the legislative intent in enacting the statute. *In re Election Contest of Democratic Primary Held May 4, 1999 for Clerk, Youngstown Mun. Court* (2000), 88 Ohio St.3d 258, 265, 725 N.E.2d 271, 277. In construing the comparable R.C. 731.31 requirement that initiative petitions contain a "full and correct copy of the title and text of the proposed ordinance," we have held that the purpose of this requirement is to fairly and substantially present the issue to electors in order to avoid misleading them. *Christy v. Summit Cty. Bd. of Elections* (1996), 77 Ohio St.3d 35, 38, 671 N.E.2d 1, 4 ("Omitting the title and/or text of a proposed ordinance is a fatal defect because it interferes with a petition's ability to fairly and substantially present the issue and might mislead electors");

*State ex rel. Hazel v. Cuyahoga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 165, 167, 685 N.E.2d 224, 226.

{¶ 16} Rejecting the petition here because of a slight misstatement in the acreage listed in the ordinance does not further the legislative purposes of fairly presenting the ordinance to electors and preventing them from being misled. In this regard, the title of the ordinance states that the property involved is *approximately* 89.425 acres, and the referendum petition specifies the title of the ordinance as involving property that is *approximately* 89.45 acres. There is no evidence nor is there any reasonable argument that this *de minimis* error could have misled electors to sign a petition that they would not have signed had the correct acreage been listed. The same conclusion is warranted for Stutzman's other contention concerning the lack of a comma in the corporate name of Homewood Homes, Inc.

{¶ 17} As we have previously held in an election case in which a petitioner had failed to comply with a technical election requirement, " '[a]bsolute compliance with every technicality should not be required * * * unless such complete and absolute conformance to each technical requirement * * * serves a public interest and a public purpose.' " (Ellipses *sic*.) *State ex rel. Fite v. Saddler* (1991), 62 Ohio St.3d 170, 173, 580 N.E.2d 1065, 1067, quoting *Stern v. Cuyahoga Cty. Bd. of Elections* (1968), 14 Ohio St.2d 175, 180, 43 O.O.2d 286, 289, 237 N.E.2d 313, 317. Invalidating the referendum petition here based on the hypertechnical grounds suggested by Stutzman serves no public interest or public purpose, including the legislative purpose of the R.C. 731.31 requirement of a "full and correct copy of the title of the ordinance."

{¶ 18} Moreover, Stutzman's reliance on *Esch* and *State ex rel. Burech v. Belmont Cty. Bd. of Elections* (1985), 19 Ohio St.3d 154, 19 OBR 437, 484 N.E.2d 153, to claim that the referendum petition is fatally defective is misplaced. *Esch* involved an initiative petition that contained *no title* of the proposed ordinance, and *Burech* addressed a referendum petition that contained *neither the title nor the text*

of the resolution, as required by R.C. 305.32. The title is not completely missing from the petition here. And both of these cases emphasized the potential for misleading petition signers, which is nonexistent here.

{¶ 19} Therefore, the board neither abused its discretion nor clearly disregarded R.C. 731.31 in denying Stutzman's protest.

R.C. 3599.36; Election Falsification Statement

{¶ 20} Stutzman next contends that the board abused its discretion and acted in clear disregard of R.C. 3599.36 by upholding the validity of the referendum petition even though the petition failed to include the election falsification statement required by that statute. We hold that the board neither abused its discretion nor clearly disregarded R.C. 3599.36, albeit for different reasons than those expressed by the board.

{¶ 21} The referendum petition included the language specified in former R.C. 3501.38(J), which provided prior to August 28, 2001:

"All declarations of candidacy, nominating petitions, or other petitions under this section shall be accompanied by the following statement in boldface capital letters: **THE PENALTY FOR ELECTION FALSIFICATION IS IMPRISONMENT FOR NOT MORE THAN SIX MONTHS, OR A FINE OF NOT MORE THAN ONE THOUSAND DOLLARS, OR BOTH.**" (Boldface *sic*.) 143 Ohio Laws, Part II, 1940, 1941.

{¶ 22} Before December 9, 1997, R.C. 3599.36 similarly provided that election falsification was a misdemeanor of the first degree and that "[e]very paper, card, or other document relating to any election matter which calls for a statement to be made under penalty of election falsification shall be accompanied by the following statement in boldface capital letters: 'The penalty for election falsification is imprisonment for not more than six months, or a fine of not more than one thousand dollars, or both.' " 138 Ohio Laws, Part II, 4570, 4748.

{¶ 23} Effective December 9, 1997, however, the General Assembly enacted Am.Sub.S.B. No. 116, which amended R.C. 3599.36 to provide:

"Whoever violates this section is guilty of election falsification, a felony of the fifth degree.

"Every paper, card, or other document relating to any election matter that calls for a statement to be made under penalty of election falsification shall be accompanied by the following statement in bold face capital letters: 'Whoever commits election falsification is guilty of a felony of the fifth degree.' " 147 Ohio Laws, Part IV, 7608, 7667.

{¶ 24} The referendum petition here, which required circulators' statements to be made under penalty of election falsification, see R.C. 3501.38(E), contained the language in former R.C. 3501.38(J) instead of the language required by R.C. 3599.36. Under R.C. 1.52(A), "If statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails." See, also, *State v. Rush* (1998), 83 Ohio St.3d 53, 58, 697 N.E.2d 634, 638. Former R.C. 3501.38(J) is irreconcilable with R.C. 3599.36. Unlike the current version, which became effective on August 28, 2001, former R.C. 3501.38(J) retained the penalties for a first-degree misdemeanor even though effective December 9, 1997, the General Assembly amended R.C. 3599.36 to make election falsification a fifth-degree felony, which carries harsher penalties than those specified in former R.C. 3501.38(J). See, *e.g.*, R.C. 2929.14(A)(5) and 2929.18(A)(3)(e).

{¶ 25} Therefore, under R.C. 1.52(A), R.C. 3599.36, the statute later in date of enactment, prevails over former R.C. 3501.38(J).

{¶ 26} The board was consequently mistaken in determining that the petition contained the appropriate election falsification language.

{¶ 27} Nevertheless, as we noted in our previous discussion analyzing R.C. 731.31, in construing the applicable election falsification petition requirement, our

8

paramount concern is the legislative intent. *In re Election Contest*, 88 Ohio St.3d at 265, 725 N.E.2d at 277.

{¶ 28} In *State ex rel. Griffin v. Krumholtz* (1982), 70 Ohio St.2d 125, 24 O.O.3d 234, 435 N.E.2d 1110, we held that the absence of the statutorily mandated election falsification statement in a referendum petition rendered the petition defective. In that case, we specified that the purpose of the election falsification statement is "to insure not only that the signers and circulators of the petition be made aware of the fact that election falsification is a crime but also that significant sanctions are imposed for violations of the election laws." *Id.* at 127, 24 O.O.3d at 235, 435 N.E.2d at 1111.

{¶ 29} This purpose is sufficiently advanced here by the inclusion of the language used by the petitioners, which was on the form supplied by the office of the Secretary of State and was consistent with the language of former R.C. 3501.38(J), which the General Assembly had failed to amend at the same time it amended R.C. 3599.36. In other words, the language, though technically incorrect because of the amendment to R.C. 3599.36, ensured that petition signers and circulators were aware that election falsification is a crime and that it carries significant sanctions. While the actual statutory penalty was erroneous, the petition satisfied the purposes of the statutory requirement.

{¶ 30} We note that in the period from December 9, 1997 until August 28, 2001, when there were confusing, conflicting "mandatory" statutory requirements for the appropriate election falsification statement, petitioners seeking to exercise their important constitutional right of referendum reasonably relied on former R.C. 3501.38(J) and used a form prescribed by the Secretary of State. There is no evidence or even a contention by Stutzman that the persons who either signed or circulated the petition appreciated the distinction between "imprisonment for not more than six months or a fine of not more than $1,000, or both" and "a felony of the fifth degree." Nor is there evidence or any argument that persons would not

have signed or circulated the petition if the petition instead contained the language required by R.C. 3599.36.

{¶ 31} We note, however, that with the August 28, 2001 amendment to R.C. 3501.38(J), both it and R.C. 3599.36 now require the same language, and that petitioners should follow this requirement in the future in order to avoid any invalidation of their petition. But under the limited circumstances evident here, where the different statutes provided mixed signals from the General Assembly, the petitioners' constitutional right of referendum should not be thwarted by their technical violation of R.C. 3599.36. The board neither abused its discretion nor clearly disregarded applicable law by refusing to invalidate the referendum petition on this basis.

Conclusion

{¶ 32} Based on the foregoing, Stutzman has failed to establish his entitlement to the writ. The board acted properly by denying his protest and submitting the referendum issue to the electorate. The board specifically found that there was no evidence that the petition conveyed a confusing or mistaken impression about the substance of the zoning ordinance that was the subject of the referendum petition. The petition included the notification of the potential for criminal prosecution and sanctions for election falsification. There was also no evidence or any contention by Stutzman of any willful or knowing misrepresentation in order to persuade persons to sign the petition.

{¶ 33} Accordingly, we deny the requested writ of prohibition and permit the board and its members to proceed with submitting the referendum on Ordinance No. 06-01 to the Plain City electorate. Under the unique circumstances of this case, a contrary holding would constitute an unreasonable restriction on the constitutional right of referendum reserved to the people of each municipality. See *State ex rel. Commt. for the Referendum of Ordinance No. 3543-00 v. White* (2000),

90 Ohio St.3d 212, 218, 736 N.E.2d 873, 878 (court's duty to avoid unreasonable or absurd results).

*Writ denied.*

DOUGLAS, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and COOK, J., dissent.

————————————

**MOYER, C.J., dissenting.**

{¶ 34} In concurring with the dissent authored by Justice Cook I write to express my concern that a majority opinion would so easily disregard the clear direction of the General Assembly in its amendment of R.C. 3599.36. The majority attempts to confine its holding to the confusion created by the "mixed signals from the General Assembly." One can only hope that it will be so confined. But, as is true in so many issues decided by a Supreme Court, the majority opinion produces implications far beyond the facts of this case.

{¶ 35} As observed in Justice Cook's dissent, boards of elections and others responsible for efficient and fair elections will not know when "substantial" compliance with a clear statutory mandate is sufficient or whether actual compliance is required. With one opinion, we have obfuscated a rule of statutory construction and principles upon which an important body of election law has been developed.

{¶ 36} I respectfully dissent.

COOK, J., concurs in the foregoing dissenting opinion.

————————————

**COOK, J., dissenting.**

{¶ 37} I respectfully dissent. As the majority notes, the dispositive issue in this case is whether the board of elections abused its discretion or clearly disregarded applicable law by denying Stutzman's protest. Because the board clearly disregarded the election falsification language requirement of R.C. 3599.36, Stutzman is entitled to the requested writ of prohibition.

{¶ 38} As the majority recognizes, R.C. 3599.36, the statute later in date of enactment, prevails over former R.C. 3501.38(J). See R.C. 1.52(A) ("If statutes enacted at the same or different sessions of the legislature are irreconcilable, the statute latest in date of enactment prevails"). "[T]he settled rule is that election laws are mandatory and require strict compliance," and that "[s]ubstantial compliance is acceptable *only* when an election statute expressly permits it." (Emphasis added.) *State ex rel. Thurn v. Cuyahoga Cty. Bd. of Elections* (1995), 72 Ohio St.3d 289, 294, 649 N.E.2d 1205, 1209-1210; *State ex rel. Citizens for Responsible Taxation v. Scioto Cty. Bd. of Elections* (1992), 65 Ohio St.3d 167, 169, 602 N.E.2d 615, 617. We have held that the election falsification language requirement at issue here is mandatory and requires strict compliance. See *State ex rel. Griffin v. Krumholtz* (1982), 70 Ohio St.2d 125, 127, 24 O.O.3d 234, 235, 435 N.E.2d 1110, 1111-1112.

{¶ 39} The majority erroneously rules on the supposed intent of the General Assembly to support its departure from the statutory language. "In order to determine legislative intent *it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself*." (Emphasis added.) *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601, 605. R.C. 3599.36 is unambiguous and must be applied as written, without resort to interpretative rules that would apply only if the statutes were ambiguous. *State ex rel. Wolfe v. Delaware Cty. Bd. of Elections* (2000), 88 Ohio St.3d 182, 186, 724 N.E.2d 771,

774; *Bailey v. Republic Engineered Steels, Inc.* (2001), 91 Ohio St.3d 38, 39-40, 741 N.E.2d 121, 123.

{¶ **40**} R.C. 3599.36 provides that "[e]very paper, card, or other document relating to any election matter that calls for a statement to be made under penalty of election falsification *shall be accompanied by the following statement in bold face capital letters*: 'Whoever commits election falsification is guilty of a felony of the fifth degree.' " (Emphasis added.) This statute sets forth a patent and unambiguous requirement that the majority concedes was not satisfied here. The majority simply holds that these errors are "technical" and hence not fatal to the petition. But there is nothing in the statutory language that distinguishes between "technical" and "nontechnical" statutory violations. In making this distinction, the majority has inserted words that are not included in these statutes. See *Bailey*, 91 Ohio St.3d at 39-40, 741 N.E.2d at 123 ("In considering statutory language, it is the duty of the court to give effect to the words used in a statute, not to delete words used or to insert words not used"). Although we have a duty to liberally construe statutes in favor of the constitutional right to referendum, requiring the falsification statement in R.C. 3599.36 does not contravene this duty; it merely applies the plain language of the applicable statutes. *E. Ohio Gas Co. v. Wood Cty. Bd. of Elections* (1998), 83 Ohio St.3d 298, 302, 699 N.E.2d 916, 919.

{¶ **41**} Furthermore, the majority's reliance on authorities such as *Stern v. Cuyahoga Cty. Bd. of Elections* (1968), 14 Ohio St.2d 175, 43 O.O.2d 286, 237 N.E.2d 313, is misplaced. That case's dictum—stating that absolute technical compliance with statutory election petition requirements is not always necessary— is limited to cases "where the statute requires only *substantial* compliance," which is not the case with the statute involved here. (Emphasis *sic*.) *Id.* at 184, 43 O.O.2d at 291, 237 N.E.2d at 319; see, also, *State ex rel. Esch v. Lake Cty. Bd. of Elections* (1991), 61 Ohio St.3d 595, 597, 575 N.E.2d 835, 837 ("The court of appeals properly distinguished *Stern* * * * because the statutes in [that case] expressly

allowed substantial compliance, and R.C. 731.31 does not"); but, cf., *State ex rel. Fite v. Saddler* (1991), 62 Ohio St.3d 170, 580 N.E.2d 1065.

{¶ 42} The board of elections here did not even reach the analysis engaged in by the majority concerning the lack of an R.C. 3599.36 election falsification statement because it wrongly concluded that this requirement did not become effective until August 28, 2001. As the majority points out, this portion of R.C. 3599.36 was in effect as of December 9, 1997, and during the time the referendum petition was circulated and signed.

{¶ 43} The Legislative Service Commission noted that the Am.Sub.H.B. No. 5 amendment to R.C. 3501.38(J), effective August 28, 2001, merely changed that section to comport with the continuing viable and controlling law set forth in R.C. 3599.36:

"*Continuing law makes election falsification a felony of the fifth degree (sec. 3599.36—not in the act). But, under former law, various forms in the Election Law, and in other parts of the Revised Code, that had to be signed under 'penalty of election falsification' incorrectly identified the penalty for the offense* as imprisonment for not more than six months, a fine of not more than $1,000, or both; these sanctions pertain to the time when the offense was a misdemeanor of the first degree. *The act changes these incorrect references to match continuing law's 'felony of the fifth degree' status of election falsification.*" (Emphasis added.) Legislative Service Commission, Final Bill Analysis of Am.Sub.H.B. No. 5, at 11.

{¶ 44} The board's reliance on the fact that the petition was on a form prescribed by the Secretary of State is also misplaced because the form was prescribed in November 1996, which predates the December 9, 1997 amendment to R.C. 3599.36 that is dispositive here. In fact, in *State ex rel. Ascani v. Stark Cty. Bd. of Elections* (1998), 83 Ohio St.3d 490, 700 N.E.2d 1234, the Secretary of State denied a protest to a local option petition that included the R.C. 3599.36 election falsification statement instead of the former R.C. 3501.38(J) language. One could

reasonably infer from *Ascani* that the Secretary of State viewed R.C. 3599.36 to set forth the required election falsification statement, not former R.C. 3501.38(J). See *State ex rel. Stevens v. Geauga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 223, 227, 736 N.E.2d 882, 885, quoting *State ex rel. Herman v. Klopfleisch* (1995), 72 Ohio St.3d 581, 586, 651 N.E.2d 995, 999 (" '[W]hen an election statute is subject to two different, but equally reasonable, interpretations, the interpretation of the Secretary of State, the state's chief election officer, is entitled to more weight' ").

{¶ 45} Finally, I would note that in *Griffin*, 70 Ohio St.2d at 127, 24 O.O.3d at 235, 435 N.E.2d at 1111-1112, we rejected an argument comparable to the ones espoused by the majority and the board by holding:

"Relator's argument that his statement more accurately described what election falsification entailed is without merit. *To adopt relator's argument would necessarily require this court to find that relator, and not the General Assembly, is in the best position to determine the appropriate language to be included in referendum petitions. This we decline to do.*" (Emphasis added.)

{¶ 46} Similarly, we should not substitute our judgment as to what is or is not required for election petitions in contravention of the plain language provided by the General Assembly in its statutes. The General Assembly is in the best position to determine the applicable requirements for election petitions and it has done so here by enacting R.C. 3599.36. By amending R.C. 3599.36 in 1997, the General Assembly's uncontroverted intent was that petition signers and circulators be aware that election falsification is a felony of the fifth degree. The majority's interpretation does not comport with this intent. This decision can only add confusion to the election process as to whether other statutory requirements need to be followed or can be ignored on the basis that they are only "technical" requirements.

**{¶ 47}** As even the majority recognizes, the board clearly disregarded the specific requirements of R.C. 3599.36.  Therefore, based on the applicable standard, Stutzman is entitled to the requested writ of prohibition.

MOYER, C.J., concurs in the foregoing dissenting opinion.

_____

*Donald J. McTigue*, for relator.

*Stephen J. Pronai*, Madison County Prosecuting Attorney, for respondents.

_____