OPINION AND JOURNAL ENTRY
{¶ 1} On March 5, 2004, Relator ACT One filed with this Court a verified complaint for writ of prohibition, writ of mandamus, and injunctive relief. Relator filed an amended complaint on March 23, 2004. The named Respondents were Columbiana County Juvenile Court Judge Thomas M. Baronzzi ("Judge Baronzzi"), Columbiana County Prosecuting Attorney Robert Herron ("Prosecutor Herron"), Columbiana County Sheriff David L. Smith ("Sheriff Smith") and the Columbiana County Department of Job and Family Services ("CCDJFS"). Relator has alleged that it is an Ohio non-profit corporation licensed with the CCDJFS to administer and operate a counseling and treatment center. ACT One provides services to juveniles who have been transferred to its facility for mental health treatment, as well as treatment for juvenile sex offenders.
 {¶ 2} The complaint alleged that Judge Baronzzi has refused to accept the recommendations of the Ohio Department of Youth Services ("ODYS") concerning the placement of juveniles at the ACT One facility. Relator contends that Judge Baronzzi's refusal violates R.C. § 5139.51(B), which enumerates certain duties of ODYS and the juvenile court relating to supervised release of juvenile offenders. Relator contends that Judge Baronzzi's actions have caused ODYS and other referral agencies to suspend any referrals to the ACT One facility. Relator requests this Court to issue a writ of prohibition or mandamus against Judge Baronzzi to prevent the judge from filing judgment entries that contain language challenging ODYS's placement of juveniles in the ACT One facility. Relator also requests an injunction or writ of mandamus against Sheriff Smith to maintain the confidentiality requirements of R.C. § 2151.421, which deals with the reporting of abuse and neglect of juveniles. Relator further requests a writ of mandamus to compel the Respondents to comply with a "memorandum of understanding" that Respondents have entered into regarding the procedures to be used in cases of child abuse and neglect. For the following reasons, Relator's arguments are found to be without merit and the complaint is dismissed.
 Claims Against Judge Baronzzi {¶ 3} In its complaint, Relator alleges that, "Judge Baronzzi has refused to allow the placement of any further juveniles to the ACT One facility * * *." As evidence of this, Relator attached to its complaint two photocopies of judgment entries, dated February 11, 2004, issued by Judge Baronzzi. These judgment entries were apparently issued in response to notices sent by ODYS to Judge Baronzzi that two juveniles were being released on parole and were about to be placed at the ACT One facility in Rogers, Ohio. The notices from ODYS were not attached to the complaint. The two judgment entries issued by Judge Baronzzi stated: "[t]he Court hereby disapproves of said placement and does not adopt the terms of parole regarding the minor that the Court is unwilling to approve any placement in the Act I Rogers facility." (Emphasis in original.) This statement by Judge Baronzzi forms the basis of Relator's request for a writ of prohibition, writ of mandamus and an injunction.
 {¶ 4} The three types of relief that Relator has requested are distinct and, in some ways, mutually exclusive. For example, a writ of mandamus is defined as, "a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R.C. § 2731.01. In order for a writ of mandamus to be issued, the relator must show a clear legal right to the requested acts, a corresponding clear legal duty on the respondent to perform those acts, and the absence of a plain and adequate remedy in the ordinary course of law. State ex rel.Sekermestrovich v. Akron (2001), 90 Ohio St.3d 536, 537,740 N.E.2d 252.
 {¶ 5} On the other hand, the purpose of an injunction is to prevent future harm. Lemley v. Stevenson (1995),104 Ohio App.3d 126, 136, 661 N.E.2d 237. If we determine that the substance of the writ of mandamus is actually a request for a prohibitive injunction, then the action must be dismissed because appellate courts do not have original jurisdiction to issue injunctive relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141, 150, 40 O.O.2d 141, 228 N.E.2d 631, citing State ex rel. Stine v. McCaw (1939), 136 Ohio St. 41,44, 15 O.O. 538, 23 N.E.2d 631. In other words, if the mandamus action cannot provide effective relief unless accompanied by an injunction, then mandamus is not an available remedy in an original action filed in a court of appeals. State ex rel.Walker v. Bowling Green (1994), 69 Ohio St.3d 391, 392,632 N.E.2d 904.
 {¶ 6} Relator is asking for both injunctive relief and a writ of mandamus. We do not need to guess as to whether Relator is requesting an injunction, because it is clearly stated in the complaint. (3/23/04 Amended Complaint, p. 4.) This provides the first reason why Relator's claim for mandamus and injunction must be dismissed. Although Relator has recently filed a motion to amend its pleading and withdraw its request for an injunction, no amended pleading has been filed. Furthermore, it is clear from the most recent complaint that the essence of Relator's mandamus action is a request for an injunction to prevent Judge Baronzzi from attempting to influence, or even comment upon, the placement of juveniles in the ACT One facility.
 {¶ 7} In addition, a petition for writ of mandamus has specific statutory filing requirements which have not been met. First, the action must be filed as a petition, whereas Relator filed its claim as a civil complaint. R.C. § 2731.04. Second, a writ of mandamus must be filed in the name of the state, and not in the name of party requesting relief, which was not done in this case. R.C. § 2731.04.
 {¶ 8} Even if we could ignore these basic procedural and jurisdictional difficulties, Relator has not clearly stated what duty Judge Baronzzi failed to fulfill that this Court would have the authority to order him to fulfill through a writ of mandamus. The essence of Relator's complaint is that Judge Baronzzi violated the following section of R.C. 5139.51(B)(1):
 {¶ 9} "The juvenile court of the county in which the child will be placed, within fifteen days after its receipt of the copy of the supervised release plan, may add to the supervised release plan any additional consistent terms and conditions it considers appropriate, provided that the court may not add any term orcondition that decreases the level or degree of supervisionspecified by the release authority in the plan, thatsubstantially increases the financial burden of supervision thatwill be experienced by the department of youth services, or thatalters the placement specified by the plan." (Emphasis added.)
 {¶ 10} Relator contends that Judge Baronzzi altered the placement of juveniles in violation of R.C. § 5139.51(B)(1), and Relator's request for a writ of mandamus is based on this alleged statutory violation. Upon closer inspection, though, we do not find that Judge Baronzzi altered the placement of juveniles. Judge Baronzzi expressed his disapproval of ODYS's decision to place the juveniles in the ACT One group home. The two judgment entries issued by Judge Baronzzi, though, do not offer an alternative placement. They merely state that the judge has not and will not approve of the placement of juveniles at the ACT One facility. We now turn to a more thorough review of R.C. §5139.51, and related statutes, to understand why Judge Baronzzi would issue this type of judgment entry.
 {¶ 11} R.C. § 2152.22(A) states that, "[w]hen a child is committed to the legal custody of the department of youth services under this chapter, the juvenile court relinquishes control with respect to the child so committed, except as provided in divisions (B), (C), and (G) of this section or in sections 2152.82 to 2152.85 of the Revised Code."
 {¶ 12} R.C. § 2152.22(G) provides, "[w]hen a child is committed to the legal custody of the department of youth services, the court retains jurisdiction to perform the functions specified in section 5139.51 of the Revised Code with respect to the granting of supervised release by the release authority * * *."
 {¶ 13} Judge Baronzzi's jurisdiction to issue the February 11, 2004, judgment entries derives from these statutory enactments. Turning now to R.C. § 5139.51, we have located a number of relevant provisions that Relator has neglected to mention. First, R.C. § 5139.51(A) gives the juvenile court the authority to make comments about supervised release plans: "The court * * * may submit to the release authority written comments regarding, or written objections to, the supervised release or discharge of that child." The two February 11, 2004, judgment entries record Judge Baronzzi's comments about the proposed supervised release plan, and a copy of those judgment entries was delivered to ODYS. Thus far, the judgment entries conform to the dictates of the statute.
 {¶ 14} Second, R.C. § 5139.51(A) places a burden on ODYS to review the juvenile court's comments about the proposed placement of juveniles: "[i]n conducting the review of the child's case regarding the possibility of supervised release or discharge, the release authority shall consider any comments and objections so submitted or communicated by the court * * *." Because ODYS is required to review and consider any comments made by the juvenile court, there appears to be an expectation in the statute that the judge's comments will affect the placement of juveniles. The fact that ODYS may have acted on Judge Baronzzi's disapproval of the ACT One facility appears to fall within the purpose and scope of R.C. § 5139.51(A).
 {¶ 15} Third, the juvenile court is not required to approve of any aspect of a release plan submitted by ODYS. R.C. §5139.51(B)(1) presents three options the juvenile court may utilize upon receiving a placement plan by ODYS:
 {¶ 16} "[1] If, within fifteen days after its receipt of the copy of the supervised release plan, the juvenile court of the county in which the child will be placed does not add to the supervised release plan any additional terms and conditions, the court shall enter the supervised release plan in its journal within that fifteen-day period and, within that fifteen-day period, shall send to the release authority a copy of the journal entry of the supervised release plan. The journalized plan shall apply regarding the child's supervised release.
 {¶ 17} "[2] If, within fifteen days after its receipt of the copy of the supervised release plan, the juvenile court of the county in which the child will be placed adds to the supervised release plan any additional terms and conditions, the court shall enter the supervised release plan and the additional terms and conditions in its journal and, within that fifteen-day period, shall send to the release authority a copy of the journal entry of the supervised release plan and additional terms and conditions. The journalized supervised release plan and additional terms and conditions added by the court that satisfy the criteria described in this division shall apply regarding the child's supervised release.
 {¶ 18} "[3] If, within fifteen days after its receipt of the copy of the supervised release plan, the juvenile court of the county in which the child will be placed neither enters in its journal the supervised release plan nor enters in its journal the supervised release plan plus additional terms and conditions added by the court, the court and the department of youth services may attempt to resolve any differences regarding the plan within three days. If a resolution is not reached within that three-day period, thereafter, the supervised release plan shall be enforceable to the same extent as if the court actually had entered the supervised release plan in its journal."
 {¶ 19} According to these provisions, the juvenile court may journalize the original release plan submitted by ODYS, or may journalize a modified release plan, or may attempt an alteration of the release plan through discussions with ODYS. Under the third option, the juvenile court and ODYS may attempt to resolve their differences, or ODYS may wait the prescribed time period and enforce the release plan even though the juvenile court has not journalized the plan.
 {¶ 20} The February 11, 2004, judgment entries appear to fall within the third option described in the statute. The juvenile court expressed its opinion about the proposed release plan but did not approve of the plan. The court's judgment entry, including its comments about the ACT One facility, was sent to ODYS. According to Relator's allegations, ODYS decided to acquiesce to Judge Baronzzi's request rather than enforce the initial supervised release plan. Once again, the statute contemplates that there will be interaction between the juvenile court and ODYS, and allows for the possibility that the supervised release plan may be completely altered by ODYS in response to any concerns expressed by the juvenile court.
 {¶ 21} Because the February 11, 2004, judgment entries fall within the parameters of R.C. § 5139.51, Relator has no basis for asserting that it is entitled to the relief that it has requested or that Judge Baronzzi has a clear legal duty to approve of ODYS's placement of juveniles in the ACT One facility. Relator has failed to allege facts that in any way establish the first two essential elements of a writ of mandamus.
 {¶ 22} For these same reasons, we must also overrule Relator's request for a writ of prohibition. In order to be entitled to a writ of prohibition, the relator must establish: (1) that the respondent is about to exercise judicial or quasi-judicial power, (2) that this exercise of power is unauthorized by law, and (3) that the denial of the writ will cause injury for which no other adequate remedy in the ordinary course of the law exists. Stutzman v. Madison Cty. Bd. ofElections (2001), 93 Ohio St.3d 511, 513, 757 N.E.2d 297. A writ of prohibition may also be ordered to correct the results of prior judicial or quasi-judicial acts that are patently and unambiguously unauthorized. State ex rel. Litty v. Leskovyansky
(1996), 77 Ohio St.3d 97, 98, 686 N.E.2d 1126.
 {¶ 23} Based on our reading of R.C. § 5139.51, we hold that the February 11, 2004, judgment entries are authorized by law, and that the second required element of a writ of prohibition cannot be established.
 {¶ 24} For the aforementioned reasons, we overrule Relator's request for injunction, writ of mandamus, and writ of prohibition against Judge Baronzzi.
 Claims Against Sheriff Smith and CCDJFS {¶ 25} Relator alleges that it has filed reports of known or suspected child abuse that have occurred within its facility, pursuant to R.C. § 2151.421. Relator alleges that these reports are confidential pursuant to a "memorandum of understanding" between it and Respondents. Relator requests that an injunction be issued against Sheriff Smith to prevent him from breaching the confidentiality of these reports.
 {¶ 26} As we have already stated, the courts of appeal do not have original jurisdiction to grant injunctive relief, and for this reason we must dismiss Relator's claim for an injunction.State ex rel. Crabtree v. Franklin Cty. Bd. of Health (1997),77 Ohio St.3d 247, 248, 673 N.E.2d 1281.
 {¶ 27} Relator also asks for a writ of prohibition against Sheriff Smith and CCDJFS. A writ of prohibition will only issue to prevent the unauthorized exercise of judicial or quasi-judicial power. State ex rel. Goldberg v. Mahoning Cty.Probate Court (2001), 93 Ohio St.3d 160, 161, 753 N.E.2d 192. Relator has not alleged that Sheriff Smith or CCDJFS are about to exercise, or for that matter, are at all able to exercise judicial or quasi-judicial authority. For this reason we must overrule the request for a writ of prohibition against these two Respondents.
 {¶ 28} Relator further requests a writ of mandamus against Sheriff Smith and CCDJFS in order to force them to comply with the aforementioned "memorandum of understanding." R.C. §2151.421(J) provides for the creation of a memorandum of understanding by each public children's services agency. The memorandum is intended to:
 {¶ 29} "[S]et forth the normal operating procedure to be employed by all concerned officials in the execution of their respective responsibilities under this section and division (C) of section 2919.21, division (B)(1) of section 2919.22, division (B) of section 2919.23, and section 2919.24 of the Revised Code and shall have as two of its primary goals the elimination of all unnecessary interviews of children who are the subject of reports made pursuant to division (A) or (B) of this section and, when feasible, providing for only one interview of a child who is the subject of any report made pursuant to division (A) or (B) of this section. A failure to follow the procedure set forth in the memorandum by the concerned officials is not grounds for, and shall not result in, the dismissal of any charges or complaint arising from any reported case of abuse or neglect or the suppression of any evidence obtained as a result of any reported child abuse or child neglect and does not give, and shall not be construed as giving, any rights or any grounds for appeal or post-conviction relief to any person." R.C. § 2151.421(J)(2).
 {¶ 30} According to the statute, the memorandum of understanding must contain:
 {¶ 31} "(a) The roles and responsibilities for handling emergency and nonemergency cases of abuse and neglect;
 {¶ 32} "(b) Standards and procedures to be used in handling and coordinating investigations of reported cases of child abuse and reported cases of child neglect, methods to be used in interviewing the child who is the subject of the report and who allegedly was abused or neglected, and standards and procedures addressing the categories of persons who may interview the child who is the subject of the report and who allegedly was abused or neglected." R.C. § 2151.421(J)(3).
 {¶ 33} The memorandum of understanding must be signed by the following parties:
 {¶ 34} "(a) If there is only one juvenile judge in the county, the juvenile judge of the county or the juvenile judge's representative;
 {¶ 35} "(b) If there is more than one juvenile judge in the county, a juvenile judge or the juvenile judges' representative selected by the juvenile judges or, if they are unable to do so for any reason, the juvenile judge who is senior in point of service or the senior juvenile judge's representative;
 {¶ 36} "(c) The county peace officer;
 {¶ 37} "(d) All chief municipal peace officers within the county;
 {¶ 38} "(e) Other law enforcement officers handling child abuse and neglect cases in the county;
 {¶ 39} "(f) The prosecuting attorney of the county;
 {¶ 40} "(g) If the public children services agency is not the county department of job and family services, the county department of job and family services;
 {¶ 41} "(h) The county humane society." R.C. §2151.421(J)(1).
 {¶ 42} Relator specifically alleges that juvenile residents of the ACT One facility have been interviewed by the Columbiana County Sheriff's Department without a counselor or staff member present in violation of the memorandum of understanding. Relator contends that Sheriff Smith and CCDJFS failed to timely investigate reports of alleged child abuse or neglect in violation of R.C. § 2151.421 and the memorandum of understanding. Finally, Relator alleges that CCDJFS failed to report the status of its investigations to ACT One as required by the memorandum of understanding.
 {¶ 43} As earlier discussed, a writ of mandamus cannot issue unless the relator complies with the filing requirements set forth in R.C. § 2731.04. The relator must also demonstrate the following: 1) there is a clear legal right to relief sought; 2) the respondent has a clear legal duty to perform the requested actions; and 3) the relator has no adequate remedy at law. Stateex rel. Ohio Assn. of Pub. School Emp. v. Batavia Local SchoolDist. Bd. of Edn. (2000), 89 Ohio St.3d 191, 198,729 N.E.2d 743.
 {¶ 44} We have already noted that Relator did not satisfy the requirements of R.C. § 2731.04, in that the request for a writ of mandamus was filed as a civil complaint rather than a petition, and because Relator did not file the action in the name of the State of Ohio.
 {¶ 45} In addition, Relator has failed to allege facts that could demonstrate a clear legal right to the relief it seeks. Relator is not a signatory to the memorandum of understanding, and cannot enforce it as a party to the agreement. Relator has not pointed to any specific provisions of the memorandum of understanding that Respondents allegedly have a duty to perform. Relator has not made reference to any specific instance in which Respondents failed to perform a clearly defined duty. Furthermore, the memorandum of understanding is intended to protect juveniles rather than to protect Relator's interests.
 {¶ 46} We must note that R.C. § 2151.421(J), which sets forth the requirement of the memorandum of understanding, also states that the "failure to follow the procedure set forth in the memorandum * * * shall not be construed as giving, any rights or any grounds for appeal * * * to any person." R.C. §2151.421(J)(2).
 {¶ 47} Relator's complaint contains a number of vague and general accusations about the failure of CCDJFS to deliver reports to Relator about the status of abuse and neglect investigations, and the failure of Sheriff Smith to adequately investigate allegations of abuse and neglect. A writ of mandamus will not be issued in response to such vague allegations: "A general request, which asks for everything, is not only vague and meaningless, but essentially asks for nothing. At the very least, such a request is unenforceable because of its overbreadth. At the very best, such a request is not sufficiently understandable so that its merit can be properly considered." State ex rel.Zauderer v. Joseph (1989), 62 Ohio App.3d 752, 756,577 N.E.2d 444.
 {¶ 48} It is our conclusion that mandamus is not warranted in this case. "[M]andamus may only issue in the discretion of the court and never when the matter is doubtful." State ex rel.Strothers v. Murphy (1999), 132 Ohio App.3d 645, 650,725 N.E.2d 1185.
 {¶ 49} We overrule all of Relator's claims for relief based on the jurisdictional and/or procedural defects mentioned above, and because Relator has not alleged facts which could support the issuance of writs of mandamus or prohibition, or the issuance of an injunction. Relator's complaint is hereby dismissed.
 {¶ 50} Final order. Clerk to serve notice as provided by the Civil Rules.
Waite, P.J., concurs.
Donofrio, concurs.
DeGenaro, concurs.