DOSS PETROLEUM, INC.

v.

COLUMBIANA COUNTY BOARD OF ELECTIONS et al.

[Cite as *Doss Petroleum, Inc. v. Columbiana Cty. Bd.
of Elections,* 164 Ohio App.3d 255, 2005-Ohio-5633.]

Court of Appeals of Ohio,
Seventh District, Columbiana County.

No. 05 CO 55.

Decided Oct. 21, 2005.

256

Donald J. McTigue, Robert A. Beattey Jr., and Mark A. McGinnis, for relator.

Robert Herron, Columbiana County Prosecuting Attorney, and Andrew A. Beech, Assistant Prosecuting Attorney, for respondents.

———

Per Curiam.

{¶ 1} Relator, Doss Petroleum, Inc., has filed a complaint for a writ of mandamus against the Columbiana County Board of Elections and against the individual members of the board of elections. Relator conducts a carryout beverage business and had circulated an election petition regarding the sale of alcoholic beverages in Fairfield Township. The petition has not been approved by the board of elections because it does not contain the statutorily required number of valid signatures of electors of Fairfield Township. The parties have stipulated that the board of elections issued to relator a certificate of the required number of signatures, that this certificate incorrectly indicated that 82 valid signatures were required, that relator was required by statute to obtain 96 valid signatures, and that relator obtained 92 valid signatures. The issue to be resolved in this action is whether the board of elections must approve relator's petition even without the required 96 valid signatures.

{¶ 2} We must first note that relator has not fulfilled a number of the procedural requirements for requesting a writ of mandamus. R.C. 2731.04 states:

{¶ 3} "Application for the writ of mandamus must be by petition, in the name of the state on the relation of the person applying, and verified by affidavit."

{¶ 4} Relator filed a complaint for mandamus rather than a petition, did not submit its complaint in the name of the state, and did not verify its complaint by affidavit. Normally, these reasons would be sufficient to dismiss relator's complaint. See, e.g., Griffin v. State, 7th Dist. No. 03 MA 221, 2004-Ohio-4993, 2004 WL 2334361.

{¶ 5} Respondent, though, has not objected to any of these deficiencies, and therefore we will proceed to address the merits of this mandamus action.

{¶ 6} A relator is entitled to a writ of mandamus if the following conditions are satisfied: (1) the relator demonstrates a clear legal right to the relief prayed for, (2) the respondent is under a corresponding legal duty to perform the actions that make up the prayer for relief, and (3) the relator has no plain and adequate remedy in the ordinary course of law. State ex rel. Berger v. McMonagle (1983), 6 Ohio St.3d 28, 29, 6 OBR 50, 451 N.E.2d 225.

{¶ 7} The parties have stipulated that relator has no adequate remedy at law.

{¶ 8} There are a number of election statutes at issue in this case. "In general, election statutes in Ohio are mandatory and require strict compliance unless the statute specifically permits substantial compliance." *Stutzman v. Madison Cty. Bd. of Elections* (2001), 93 Ohio St.3d 511, 514, 757 N.E.2d 297. On the other hand, "courts must avoid unduly technical interpretations that impede public policy in election cases." Id. Finally, it must be kept in mind that the "paramount concern in construing any statutory requirement is the legislative intent in enacting the statute." Id. "In order to determine legislative intent it is a cardinal rule of statutory construction that a court must first look to the language of the statute itself." *State v. Jordan* (2000), 89 Ohio St.3d 488, 492, 733 N.E.2d 601.

{¶ 9} R.C. 4301.323 provides a mechanism for voters in an election district to vote on the location of liquor stores in that district:

{¶ 10} "The electors of an election precinct may exercise the privilege of local option on the sale of beer, wine and mixed beverages, or spirituous liquor at a particular location within the precinct if the petitioner for local option election is one of the following:

{¶ 11} "(A) An applicant for the issuance or transfer of a liquor permit at, or to, a particular location within the precinct;

{¶ 12} "(B) The holder of a liquor permit at a particular location within the precinct;

{¶ 13} "(C) A person who operates or seeks to operate a liquor agency store at a particular location within the precinct;

{¶ 14} "(D) The designated agent for an applicant, liquor permit holder, or liquor agency store described in division (A), (B), or (C) of this section."

{¶ 15} The parties have stipulated that relator is an applicant for the issuance of a liquor permit in the district and thus was qualified to circulate an election petition under R.C. 4301.323(A).

{¶ 16} Relator argues that it sought and received a certificate of the required number of signatures from the board of elections as provided for in R.C. 4301.32:

{¶ 17} "The privilege of local option as to the sale of intoxicating liquors is hereby conferred upon the electors of an election precinct named by the petition authorized by section 4301.33 of the Revised Code.

{¶ 18} "Upon the request of an elector, a board of elections of a county that encompasses an election precinct shall furnish to the elector a copy of the instructions prepared by the secretary of state under division (P) of section 3501.05 of the Revised Code and, within fifteen days after the request, with a certificate indicating the number of valid signatures that will be required upon a

petition to hold a special election in that precinct on a question specified in section 4301.35 or 4301.351 of the Revised Code."

{¶ 19} Relator contends that the board of elections delivered to him a certificate of the required number of signatures that indicated that 82 valid signatures of electors of the precinct would be required to hold a special election in Fairfield Township, Center Precinct. The parties have stipulated to the existence and content of this document, and a copy of it is part of the evidentiary record.

{¶ 20} Upon examining the certificate of the required number of signatures, particularly in light of the previously cited statutory provisions, we find that relator has a problem with the preliminary stages of its argument. First of all, R.C. 4301.32 allows an "elector" to request and receive a certificate indicating the required number of signatures that will be needed to hold a special election. "Elector" is defined in R.C. 3501.01(N):

{¶ 21} "(N) 'Elector' or 'qualified elector' means a person having the qualifications provided by law to be entitled to vote."

{¶ 22} The relator in this case is Doss Petroleum, Inc. Relator is a corporation, and is not an elector. Thus, relator cannot rely on R.C. 4301.32 as the basis for its argument seeking this court to grant a writ of mandamus. Furthermore, the certificate of the required number of signatures that is part of the record in this case does not list relator's name, or the name of any elector, as the recipient of the document. In fact, the "TO:" section of the document is blank. Relator cannot show that it has a clear legal right to the remedy it seeks when it cannot show that it has any right to rely on a key statute or document that presumably forms the basis of that alleged legal right. Assuming that relator could overcome this hurdle, however, it has an additional problem with this petition.

{¶ 23} The parties agree that the board of elections filled out the certificate of the required number of signatures incorrectly. This conclusion is based on certain requirements contained in R.C. 4301.333:

{¶ 24} "(A) The privilege of local option conferred by section 4301.323 of the Revised Code may be exercised if, not later than four p.m. of the seventy-fifth day before the day of a general or primary election, a petition is presented to the board of elections of the county in which the precinct is situated by a petitioner who is one of the following:

{¶ 25} "(1) An applicant for the issuance or transfer of a liquor permit at, or to, a particular location within the precinct;

{¶ 26} " * * *

{¶ 27} "(B) The petition shall be signed by the electors of the precinct equal in number to at least thirty-five per cent of the total number of votes cast in the

precinct for the office of governor at the preceding general election for that office * * *."

{¶ 28} The parties agree that relator submitted its petition to the board of elections within the time frame set by R.C. 4301.333(A). The parties have also stipulated that the number of votes cast in the 2002 gubernatorial election in Fairfield Township, Center Precinct, was 276 votes. Relator was required by R.C. 4301.333(B) to submit a petition with valid signatures equal to 35 percent or more of the total number of votes cast in the precinct in the 2002 gubernatorial election. This number is arrived at by simple mathematical calculation. The correct number of signatures is 35 percent of 276, for a total of at least 96 valid signatures.

{¶ 29} The clerk who completed the certificate of the required number of signatures, though, apparently used the wrong percentage in the calculation. Respondents' certificate lists the equivalent of 30 percent of the votes cast in the 2002 gubernatorial election. Thirty percent of 276 would mean a total of 82 required signatures. Relator either did not check or did not catch this clerical error. Again, this could have been accomplished by simple mathematical calculation.

{¶ 30} Relator contends that it submitted more than the number of signatures required by the board because the board found that the petition contained 92 valid signatures. This was more than the 82 signatures indicated by the certificate of the required number of signatures. Relator maintains that the board of elections was required to accept the validity of the election petition and to place the election issue on the November 2005 ballot, pursuant to R.C. 4301.333(D), which states:

{¶ 31} "(D) Not later than the sixty-sixth day before the day of the next general or primary election, whichever occurs first, the board shall examine and determine the sufficiency of the signatures and the validity of the petition. If the board finds that the petition contains sufficient signatures and in other respects is valid, it shall order the holding of an election in the precinct on the day of the next general or primary election, whichever occurs first, for the submission of the question or questions set forth in section 4301.355 of the Revised Code."

{¶ 32} The board of elections contends that relator has no clear legal right to have its petition accepted because it plainly does not contain the 96 valid signatures required by R.C. 4301.333(B). There is no dispute between the parties that a clear reading of R.C. 4301.333(B) required relator to obtain 96 valid signatures on the local option election petition. The board of elections is correct that relator has failed to show that it satisfied the requirements of R.C. 4301.333(B), and, thus, relator must rely on some other means to establish that it has a clear legal right to the relief it seeks.

{¶ 33} Often when a board of elections commits some clerical error that prevents an election petition from being accepted, the aggrieved party will argue that the board of elections should be estopped from using its own error as the basis for rejecting the petition. It has been held time and again, though, that estoppel does not apply against election officials relating to the performance of their governmental functions. See, e.g., *State ex rel. Svete v. Geauga Cty. Bd. of Elections* (1965), 4 Ohio St.2d 16, 33 O.O.2d 139, 212 N.E.2d 420; *State ex rel. Shaw v. Lynch* (1991), 62 Ohio St.3d 174, 176–177, 580 N.E.2d 1068. The board of elections in this case has indeed raised this defense.

{¶ 34} Relator contends that it is not asserting a common-law estoppel argument discussed in the previously mentioned cases but, rather, is relying solely on the statutory estoppel provided for in R.C. 3501.38(L), which states:

{¶ 35} "All declarations of candidacy, nominating petitions, or other petitions presented to or filed with the secretary of state or a board of elections or with any other public office for the purpose of becoming a candidate for any nomination or office or for the holding of an election on any issue shall, in addition to meeting the other specific requirements prescribed in the sections of the Revised Code relating to them, be governed by the following rules:

{¶ 36} " * * *

{¶ 37} "(L) If a board of elections distributes for use a petition form for a declaration of candidacy, nominating petition, declaration of intent to be a write-in candidate, or any type of question or issue petition that does not satisfy the requirements of law as of the date of that distribution, the board shall not invalidate the petition on the basis that the petition form does not satisfy the requirements of law, if the petition otherwise is valid."

{¶ 38} Relator contends that this case satisfies the conditions described in R.C. 3501.38(L), in that the board of elections prepared and distributed an incorrect petition form, namely, the certificate of the required number of signatures, that the form did not satisfy the requirement of law on the date of distribution, and that the petition is otherwise valid except for the error on the form. Relator contends that R.C. 3501.39(L) prohibits the board of elections from rejecting the petition simply because of the error on the certificate of the required number of signatures. We are not persuaded by this argument.

{¶ 39} First, relator has not attempted to show that the certificate of the required number of signatures is a type of "petition form" mentioned in the statute. R.C. 3501.38(L) describes the types of petition forms that are covered by the statute: "a petition form for a declaration of candidacy, nominating petition, declaration of intent to be a write-in candidate, or any type of question or issue petition." The "Certificate of Required Number of Signatures," desig-

nated as "Form No. 5–F Prescribed by the Secretary of State," does not qualify as any of the types of petition forms listed in the statute. It is, in fact, an information form, not a petition form. Thus, the certificate of the required number of signatures is not the type of document that triggers the application of R.C. 3501.38(L).

{¶ 40} Second, it is clear that the board of elections did not invalidate relator's election petition because of any error in the content of the certificate of the required number of signatures. Neither party has submitted any evidence or information indicating that the certificate of the required number of signatures was required to be submitted as part of the election petition, or was examined, relied upon, or even noticed by the board of elections when it determined that relator's petition did not contain the required number of valid signatures. The board of elections rejected relator's election petition because it did not satisfy the requirements of R.C. 4301.333(B) and not because of any error in the certificate of the required number of signatures. Therefore, it is clear that R.C. 3501.38(L) does not apply to this case and does not provide a basis to grant the relief requested by relator.

{¶ 41} Based on the above, we must overrule relator's arguments. Because we must determine that relator cannot demonstrate a clear legal right to the relief requested in this case, we hereby dismiss relator's request for a writ of mandamus. This is a final order. Costs are to be taxed against relator. Clerk to serve notice as provided by the Civil Rules.

Writ denied.

WAITE, DEGENARO, and VUKOVICH, JJ., concur.

VUKOVICH, Judge, concurring.

{¶ 42} I concur with the majority opinion. However, I add the following statements. As related to paragraph four, the relator filed a motion for leave to correct the case caption in order to add *State ex rel.* before relator's name. Thus, I would grant leave to amend rather than documenting their omission. See *State ex rel. Huntington Ins. Agency, Inc. v. Duryee* (1995), 73 Ohio St.3d 530, 532–533, 653 N.E.2d 349.

{¶ 43} I also note that relator may not have been an elector, but the board of elections still gave relator an official certificate of the required number of signatures. As the petitioner who is seeking the local option, relator should be able to point out the inaccuracies in any existing certificate related to their option request.

{¶ 44} Since case law prohibits the use of common-law estoppel against election officials, the legislature saw fit to enact a version of statutory estoppel as an

exception. However, the application of this statutory estoppel doctrine is fairly narrow. I agree that the certificate of the required number of signatures does not fall within the parameters of the statute. It has not been shown to be a petition form or any type of question or issue petition distributed for use. R.C. 3501.38(L).

{¶ 45} Still, it is disturbing, in a system designed for the common person to have easy access to the election process, that an election official can fill out an official form declaring an incorrect number of signatures needed on a petition and then hold the lack of signatures against the person who relied on the official's signed statement. This was not just a casual statement made in an attempt to assist a local option petitioner in calculating the required number of signatures.

{¶ 46} Rather, this was a certificate required by statute to be provided upon the request of an elector (whom relator should ensure it utilizes next time). What is the purpose of requiring an official certification if the petitioner cannot truly rely upon it? In cases such as this, citizens would be better off if they were required to calculate the figure themselves, instead of being led to believe that they can guarantee that their issue is on the ballot as long as they follow the directive provided to them by people holding themselves out as experts on the matter. Thus, I concur to express my disappointment in the circumstances surrounding this case.